**MILLER INSITUFORM, INC., and
Thomas E. Smith,
Plaintiffs-Appellants,**

v.

**INSITUFORM OF NORTH AMERICA,
INC.; William C. Miller, and Ira B.
Miller, Defendants-Appellees.**

No. 86–5446.

United States Court of Appeals,
Sixth Circuit.

Argued May 1, 1987.

Decided Oct. 6, 1987.

Gail Pigg, argued, Nashville, Tenn., for plaintiffs-appellants.

Steven A. Riley, argued, Robert J. Walker and R. Dale Grimes, Bass, Berry and Sims, and Andree K. Blumstein, argued, Trabue, Sturdivant & Dewitt, Nashville, Tenn., for defendants-appellees.

Before KRUPANSKY and GUY, Circuit Judges; and GILMORE,* District Judge.

GILMORE, District Judge.

Plaintiffs appeal the district court's dismissal of their claim brought under Section II of the Sherman Act, 15 U.S.C. § 2, alleging that defendant Insituform of North America (INA) unlawfully attempted to monopolize the relevant market by revoking plaintiffs' license to sell and install a patented process for the rehabilitation of pipe lines.

The district court granted summary judgment for defendant INA on the antitrust claims, and dismissed the remaining pendent state law claims without prejudice for want of federal jurisdiction.

The only issue on appeal is whether, by terminating an agreement to sublicense a patent, the exclusive licensee of the patent violates Section 2 of the Sherman Act, which prohibits monopolization or attempts to monopolize. We hold there is no violation of Section 2 under these circumstances, and affirm the district court's order of summary judgment dismissing appellants' complaint.[1]

**I**

The Insituform process is a patented process for the rehabilitation of pipe lines. The patent is owned by Insituform International, N.V., a Netherlamds Antilles Corporation. In June of 1980, Insituform International entered into a licensing agreement with INA, conveying to INA the exclusive right to the patented process throughout the United States, except in California. Subsequently, INA granted exclusive sublicenses to certain designated territories throughout the United States. One such sublicense was granted to plaintiff Miller Insituform, Inc. (MII) for the territories of

Tennessee, Kentucky, and certain portions of Ohio. Subsequent to this sublicense agreement, INA allegedly conspired to take back control of MII's exclusive territory. On or about May 9, 1984, INA terminated the sublicense agreement, allegedly because MII had failed to provide a balance sheet showing a net worth of at least $500,-000, as was required under the terms of the license agreement.

**II**

Appellants assert INA's termination of the sublicense agreement was without justification, and was a calculated move by INA to retake appellants' territory for the benefit of INA and other sublicensees. They claim that INA has an ownership interest in one or more of its other sublicensees, and that, in effect, it has thereby entered the market, enabling it to control prices. They claim INA accomplished this by terminating the sublicense agreement with appellants on the pretext that appellants had failed to satisfy a $500,000 net worth requirement.

INA argues that, even assuming, arguendo, it controlled 100 per cent of the relevant market, no Section 2 violation could occur because INA had the right under 35 U.S.C. § 154 to exclude all others from using the Insituform process whenever, and for whatever reason, it chose. Simply stated, it argues that, by virtue of the patent laws, INA enjoyed a lawful monopoly and could therefore exclude others from using the Insituform process, and even enter into the market and practice the process itself (vertical integration) without committing actionable antitrust violations.[2]

The issue here, therefore, is whether INA's action in terminating its sublicense agreement with MII constituted a violation of Section 2 of the Sherman Act. At issue

---

* The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Appellants concede that the district court's disposition removed all federal claims from the case leaving the district court without jurisdiction over the remaining pendent claims because of lack of diversity.

2. INA acknowledges that a "patent monopolist" is not immune from the antitrust laws, but maintains it has not abused its patent monopoly power in such a way as to trigger antitrust liability.

is the "obvious tension between the patent laws and antitrust laws." *United States v. Westinghouse Electric Corp.*, 648 F.2d 642 (9th Cir.1981). While this Circuit has not dealt specifically with the issue, other circuits have reached the conclusion that a patentee is free to control licensing for the exclusive use of its patent without running afoul of the prohibitions against monopoly contained in the Sherman Act.[3]

## III

This case requires consideration of two federal statutory schemes, the antitrust laws and the patent laws. Under Section 2 of the Sherman Act, 15 U.S.C. § 2, it is a violation of the antitrust laws to

> monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States ...

A Section 2 Sherman Act violation has two elements:

> (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.

*United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966).

But, under the patent laws, 35 U.S.C. § 154, it is provided:

**3.** *See United States v. Westinghouse Electric Corp.*, 648 F.2d 642 (9th Cir.1981); *SCM Corp. v. Xerox Corp.*, 645 F.2d 1195 (2d Cir.1981), *cert. denied*, 455 U.S. 1016, 102 S.Ct. 1708, 72 L.Ed.2d 132 (1982).

**4.** *Barber-Colman Co. v. National Tool Co.*, 136 F.2d 339 (6th Cir.1943), illustrates one way in which misuse of patents may result in antitrust violations. In *Barber-Colman,* the plaintiff licensor, seeking equitable relief, complained of defendant licensee's violation of a price control clause in a patent licensing agreement. Plaintiff had licensed defendant to use plaintiff's patented process on condition that defendant would not sell the unpatented product resulting from use of the process at a price lower that the price for which plaintiff sold the product. The court held this condition constituted a misuse precluding the aid of equity, and explained that

> Every patent shall contain ... a grant to the patentee, his heirs or assigns, for the term of seventeen years, ... of the right to exclude others from making, using, or selling the invention throughout the United States, ...

It is thus clear that a patentee holds a legal monopoly. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 135, 89 S.Ct. 1562, 1582, 23 L.Ed.2d 129 (1969). As one court has observed, there is a contradiction in terms between the antitrust and patent laws:

> There is an obvious tension between the patent laws and antitrust laws. One body of law creates and protects monopoly power while the other seeks to proscribe it.... "The patent laws which give a 17–year monopoly on 'making, using, or selling the invention' are in *pari materia* with the antitrust laws and modify them *pro tanto.*" *Simpson v. Union Oil Co.*, 377 U.S. 13, 24, 84 S.Ct. 1051, 1058, 12 L.Ed.2d 98 (1964).

*Westinghouse, supra* at 646–47.

Although a patentee has a limited monopoly granted by the patent laws, merely holding a patent fails to render one totally immune from the antitrust laws. The Ninth Circuit pointed out that where a patentee seeks to expand the limited monopoly granted by the patent laws by misuse, agreement, or accumulation, it is subject to the antitrust laws. *See Westinghouse, supra*, at 647.[4]

using a patent to restrain commerce is not only beyond the scope of the grant of the patent, but also in direct violation of the antitrust law.

In *Brownell v. Ketcham Wire & Mfg. Co.*, 211 F.2d 121, 129 (9th Cir.1954), the Court listed seven improper practices in connection with patents:

(a) Use of invalid patents in price fixing;
(b) Cross-licensing of patents;
(c) Attempts to extend the scope of patent monopoly;
(d) Illegal price fixing activities in connection with patents;
(e) Tieing patents to unpatented devices or processes;
(f) Seeking to extend the effect of an expired patent;
(g) Misuse of patents.

The Supreme Court has also emphasized that there are limits on the control a patent holder may exercise over his licensee:

> Among other restrictions upon him, he may not condition the right to use his patent on the licensee's agreement to purchase, use, or sell, or not to purchase, use, or sell another article of commerce not within the scope of his patent monopoly.

*Zenith Radio, supra,* at 136, 89 S.Ct. at 1583.

The Second Circuit has held that no liability exists under Section 2 of the Sherman Act on the part of one who has lawfully acquired the patent, and subsequently unilaterally refuses to license the patent. *SCM Corp. v. Xerox Corp.,* 645 F.2d 1195 (2d Cir.1981), *cert. denied,* 455 U.S. 1016, 102 S.Ct. 1708, 72 L.Ed.2d 132 (1982). Noting the conflict between these two statutory schemes as a result of the patent holder's power under the patent laws to exclude others from exploiting his invention, that court observed:

> [T]he primary purpose of the antitrust laws—to preserve competition—can be frustrated, albeit temporarily, by a holder's exercise of the patent's inherent exclusionary power during its term.

*Id.* at 1203. The *SCM* court concluded "where a patent has been lawfully acquired, subsequent conduct permissible under the patent laws cannot trigger any liability under the antitrust laws." *Id.* at 1206.

It is clear that the instant case presents, at most, claims for violation of state law ranging from breach of contract to fraud and misrepresentation, not a violation of Section 2 of the Sherman Act.

■■ A patent holder who lawfully acquires a patent cannot be held liable under Section 2 of the Sherman Act for maintaining the monopoly power he lawfully acquired by refusing to license the patent to others. *SCM Corp., supra.* Similarly, we conclude that the holder of a patent retains the power to exclude others from manufacturing, using, and selling his inventions without running afoul of the antitrust laws. Here, by terminating the sublicense agreement with the appellant, appellee merely exercised his power to exclude others from using the Insituform process, as was its right under 35 U.S.C. § 154. In so doing, it did not violate Section 2 of the Sherman Act.

Appellants contend that INA's termination of the agreement constituted a misuse of patent, rendering INA liable for antitrust violations. We reject this argument. A material issue of fact may exist as to whether INA was justified in terminating the contract, but mere breach of contract is not envisioned or included in the term "misuse of patent." The mere failure to observe state contractual obligations does not rise to the level of misuse of a patent that will render one liable for violations of Section 2 of the Sherman Act.

Appellants also argue that INA has entered into the Insituform process through partial ownership of some of its other sublicensees. Apparently, appellants' point is that assuming both the position of licensor and of competitor with its licensees renders INA potentially liable for antitrust violations. INA has recognized this theory of appellants as charging "vertical integration," but persuasively argues that this theory is inapplicable to a patent monopolist.

We agree. There is no adverse effect on competition since, as a patent monopolist, INA, from the start, had exclusive right to manufacture, use, and sell his invention.

Although the Supreme Court has advised courts to exercise caution in granting summary judgment in antitrust suits, *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), the Court has also recognized that courts may grant summary judgment in appropriate antitrust cases. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

We conclude that the grant of summary judgment in favor of INA was appropriate, and AFFIRM the district court.