Peter G. FONG, Plaintiff–Appellant,

v.

John C. LAWN, Administrator, Drug Enforcement Administration; United States Department of Justice, Drug Enforcement Administration, Defendants–Appellees.

No. 87–2389.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 15, 1988.

Decided July 21, 1988.

Thomas W. Bell, Sacramento, Cal., for plaintiff-appellant.

James M. Spears, Robert S. Greenspan, and Jacob M. Lewis, Civil Div., Washington, D.C., for defendants-appellees.

Before ALDISERT,* CANBY, and BEEZER, Circuit Judges.

PER CURIAM:

Appellant, Peter G. Fong, is a DEA employee. Relying on the language of a 1982 EEOC order in his favor, Fong appeals the dissolution of a preliminary injunction against his involuntary transfer from California to Washington, D.C. He argues that this transfer is premised on intentional racial discrimination and violates Title VII of the Civil Rights Act of 1964, section 701 et seq., 42 U.S.C. § 2000e et seq.

In addition, Fong seeks to compel DEA compliance with a provision of the EEOC order which required the DEA to adopt a formal "finding" of its discrimination against Fong.

We affirm dissolution of the preliminary injunction. We remand to the district court for further proceedings consistent with this disposition.

I

Appellant Fong is a Staff Coordinator for the Drug Enforcement Administration ("DEA"). Fong is of Chinese extraction. In 1978, he was transferred from the DEA's Hong Kong Narcotics Bureau to a DEA office in New York. He filed a com-

* The Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

plaint with the Equal Employment Opportunity Commission ("EEOC") in 1981.

On September 28, 1982, the EEOC determined that the DEA had "subjected [Fong] to disparate treatment because of his race." The EEOC found that "[t]he [DEA's] ... proffered explanation [was] unworthy of credence" and that a "bias[ ] against individuals of Chinese extraction" existed at the DEA office in Hong Kong. The EEOC concluded that "the agency's legitimate non-discriminatory reason [for the transfer from Hong Kong] is pretextual."

Accordingly, the EEOC ordered the DEA to take four "Corrective Action[s]." The EEOC ordered that the DEA: (1) "adopt a finding of discrimination in this matter," (2) "give[ ] the next available permanent duty station of his preference and qualifications[,] within the jurisdictional operations of the Agency[,] [to Fong]," (3) "undertake an appropriate inquiry as to [Fong's] charges of reprisal and discrimination subsequent to this ... complaint [pursuant to 29 C.F.R. 1613.232(b)(2)]," and (4) "award[ ] attorneys' fees [to Fong]."

"[P]ursuant to the resolution of [the] equal opportunity employment complaint," the DEA transferred Fong to the permanent duty station of his preference, Sacramento, California, in June 1983.

On February 22, 1986, Fong received notice from the DEA that he was being transferred from Sacramento to Washington, D.C. (DEA Headquarters). At that time, he had served at his Sacramento post for approximately two-and-one-half years.

The decision to transfer Fong to Washington, D.C. was made by the DEA "Career Board." The reasons stated were: (1) it is "a prerequisite for further promotion;" (2) Fong is "the senior-most Supervisory Special Agent, [GS] ... 14, who had not served in this assignment;" (3) a decision not to transfer Fong would "undermin[e] the integrity of the Program and invit[e] similar requests from other agents," since "transfers are an integral part of the [DEA career development] program;" and (4) the DEA's previous discrimination "had been resolved through the reassignment [to Sac-

ramento for the period of approximately 2½ years]."

On June 2, 1986, Fong filed a complaint in federal district court, seeking to enjoin the transfer to Washington, D.C. on the grounds that it was retaliatory and violative of his favorable 1982 EEOC order.

On June 12, 1986, the district court entered a "preliminary injunction" barring Fong's transfer to Washington, D.C. The district court's decision to grant the preliminary injunction was apparently premised on the appearance, prior to an evidentiary hearing, of "continuing racial discrimination" against Fong. A DEA motion to quash the preliminary injunction was denied.

Between December 11, 1986 and February 27, 1987, a six-day evidentiary hearing was conducted. The district court thereafter noted that "the [DEA] has manifested an intransigent disbelief in the previous [EEOC] judgment" and failed to comply with the mandated "adopt[ion] [of] a finding of discrimination," as well as with the "mandatory inquiry" into Fong's original complaint. However, it concluded that Fong's choice of Sacramento as his "permanent duty station," in partial fulfillment of the EEOC order, did not now entitle Fong to permanent immunity from any future transfer. The court dissolved Fong's "preliminary injunction" and, on June 4, 1988, issued the order denying Fong's motion for reconsideration.

Fong timely appeals that order. This court has jurisdiction under 28 U.S.C. § 1292(a)(1).

## II

Fong claims that the trial court erred when it dissolved the preliminary injunction.

Well-settled in this circuit is the rule that "[g]ranting or denying a preliminary injunction lies within the discretion of the district court," *Sudomir v. McMahon*, 767 F.2d 1456, 1458 (9th Cir.1985); *People of Gambell v. Hodel*, 774 F.2d 1414, 1418 (9th Cir.1985), *rev'd on other grounds, Amoco Production Co. v. Village of Gambell,*

*Alaska,* 480 U.S. 531, 107 S.Ct. 1396, 94 L.Ed.2d 542, and that review of a district court's grant or denial of a preliminary injunction is ordinarily "very limited." *Gambell,* 774 F.2d at 1418; *see also Apple Computer v. Formula Inter'l,* 725 F.2d 521, 523 (9th Cir.1984); *Sports Form, Inc. v. United Press Int'l,* 686 F.2d 750, 752 (9th Cir.1982). We adhere to the rule that, "[t]o obtain a preliminary injunction[,] a party must show either a combination of probable success on the merits and the possibility of irreparable injury[,] or that serious questions are raised and the balance of hardships tips sharply in its favor." *Wright v. Rushen,* 642 F.2d 1129, 1132 (9th Cir.1981); *see also Gambell,* 774 F.2d at 1419.

"The decision to ... deny [a preliminary injunction] ... will only be reversed if that decision is based on erroneous legal standards or clearly erroneous findings of fact," *Gambell,* 774 F.2d at 1419 (quoting *Oakland Tribune, Inc. v. Chronicle Publishing Co.,* 762 F.2d 1374, 1376 (9th Cir. 1985)), or if the district court has abused its discretion. *Wright,* 642 F.2d at 1132; *Sierra On–Line, Inc. v. Phoenix Software, Inc.,* 739 F.2d 1415, 1421 (9th Cir.1984).

Fong argued that the proper interpretation of "permanent duty station," a term central to the EEOC order, is a duty station which would entitle him to permanent immunity from all future transfers. The DEA argued that a "permanent duty station" is any official station not "temporary," and described the phrase as "a term of art."

The DEA argued that the EEOC order, compelling that it "give[ ] the next available permanent duty station of [Fong's] ... preference and qualification ... [to Fong]," was not intended to award Fong both the choice of his next "permanent duty station" and a grant of permanent immunity from all future transfers by the DEA.

From the record, we conclude that the common understanding of this term at the DEA and the EEOC does not confer any entitlement to immunity from transfer, a routine occurrence for DEA agents at GS–14. Indeed, Fong appears to have acknowl-edged that his assignment to Hong Kong—also a "permanent duty station"—did not carry any entitlement to immunity from transfer.

Prevailing precedent in analogous areas of federal service supports our interpretation of the term "permanent duty station." *See United States v. East,* 416 F.2d 351, 352 (9th Cir.1969) (describing typical transfer from one "permanent duty station" to another by civilian U.S. Air Force employee); *see also Blesy v. United States,* 443 F.Supp. 358, 364 (W.D.N.Y.1978) (describing military regulations pertaining to travel "from one permanent duty station to another"); *Laningham v. United States,* 5 Cl.Ct. 146, 152 (1984) (detailing military housing allowance for transfer from one "permanent duty station" to another).

The record indicates that Fong had served a typical tour of duty at the "permanent duty station" of his choice—approximately two-and-one-half years in Sacramento—prior to receiving the confirmation of transfer to Washington, D.C. The record also indicates that this tour of duty is not disproportionate to tours of duty of other DEA agents who have placed themselves within the DEA's career development program and are at pay level GS–14. Fong does not allege that he was involuntarily placed on the "fast track" career development program.

Fong rejoined that, the common understanding aside, the EEOC order intended to award him permanent immunity from future transfer by the DEA.

Since the purpose of Title VII is to "make whole" the victims of discrimination, *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed. 2d 280, 297 (1975); *accord, Franks v. Bowman Transportation Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), not to place them in a position superior to the status quo ante, we do not accept this contention.

The evidence on record does not allow us to conclude that the EEOC intended to attach a meaning to "permanent duty station" which neither the DEA, EEOC, nor prevailing precedent had or has attached to that term.

**1562**

The transfer to DEA Headquarters in Washington, D.C. is consistent with the universally-applied criteria for advancement at DEA, strictly adhered to by the DEA Career Board when it implements DEA's Career Advancement Program. Fong was the most senior GS–14 DEA agent to have served at a permanent duty station longer than two years without having been required previously to serve a tour of duty at DEA Headquarters, Washington, D.C.

On the basis of these facts, we affirm the district court's order denying reconsideration of the order vacating the preliminary injunction. We remand to the district court for further proceedings consistent with this disposition.

AFFIRMED in part and REMANDED to the district court for further proceedings.