Russell Allen NORDYKE and Sallie Ann Nordyke, dba Trade Shows, Plaintiffs,

v.

COUNTY OF SANTA CLARA, et al., Defendants.

No. C–96–20367–JW.

United States District Court, N.D. California.

July 8, 1996.

Edward P. Davis, Jr., O'Donnell Rice Davis Alexander & Granneman, The Genesis Law Group LLP, San Jose, CA, Russell S. Bogue, Joseph T. Wargo, Holland & Knight, Atlanta, GA, for plaintiffs.

Linda Deacon, Santa Clara County Counsel's Office, San Jose, CA, Susan Roeder, Thelen Marrin Johnson & Bridges, San Jose, CA, for defendant Santa Clara County.

## ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

WARE, District Judge.

## I. INTRODUCTION

This case involves one of the most controversial issues of our day: the right to bear arms and the authority of the government to control the exercise of that right. Based upon concern for public health and safety, the County of Santa Clara imposed a restriction against gun shows at the County Fairgrounds. The restriction was later clarified to allow shows, but only prohibits sales of guns at the shows. The Plaintiffs seek a preliminary injunction against the enforcement of the restriction on the ground that it is unconstitutional.

The Court recognizes the threat to community health and safety caused by proliferation of firearms, too many of which end up in the hands of people who use them irresponsibly. Nevertheless, the Court finds unconstitutional the restriction on gun show sales at the County Fairgrounds. As set forth below, the Court enjoins the County from enforcing the restriction while this action is pending.

## II. BACKGROUND

The Santa Clara County Fairgrounds is owned and operated by Santa Clara County and is funded by County taxpayers. The Fairgrounds is the center for a variety of organizations and activities, including the County Fair, religious meetings and services, cultural events, political speeches and various celebrations of all kinds. Since 1993, Plaintiffs have appeared at the Fairgrounds and conducted gun shows without incident on 20 occasions.

On January 23, 1996, during a public meeting of the Santa Clara County Board of Supervisors, the Board passed an addendum to the County's lease for the County Fairgrounds. The addendum precludes the Santa Clara County Fairgrounds Management Corp. Inc. ("FMC") from leasing fairground space to vendors for the purpose of holding "gun shows". On April 16, 1996, the County confirmed in a letter to FMC that the addendum was limited to the "sale of guns" and did not prohibit a vendor from conducting a "gun show" as long as no guns were sold during the show on fairground property. (See Exhibit N to Plaintiffs' Complaint). The letter states in relevant part:

It is the intention of the Board only to prohibit any person from selling, offering for sale, supplying, delivering, or giving possession or control of firearms or ammunition to any other person at a gun show at the fairgrounds. This prohibition applies to any act initiating any of the foregoing transactions with the intent of completing them at a later date.

It is not the intention of the Board to prohibit the exchange of information or ideas about guns, gun safety, or the display of guns for historical or educational purposes.

Apparently in response to Plaintiffs' concerns and challenge to the addendum, a second public meeting was held by the Board on June 25, 1996. Plaintiffs' counsel addressed the Board, as did numerous members of the public, to voice concern over the passage of the addendum. Some county residents contend, as Plaintiffs do, that the addendum is unconstitutional and exceeds the Board's authority, while other residents applaud the Board's efforts for the attempt to control the rising incidences of violence associated with guns in this County.

Following the hearing on June 25, the Board affirmed its earlier conclusions and decided to ban the sale of guns at the Fairgrounds. The Board clarified that the addendum bans only the sale of guns and does not prohibit any vendor from conducting a gun show at the Fairgrounds.

Plaintiffs Russell and Sallie Nordyke, dba Trade Shows', ("Plaintiffs") filed this lawsuit and moved for entry of a preliminary injunction in the above-entitled action. Plaintiffs were present in Court and were represented by attorney Joseph D. Wargo of the law firm of Holland & Knight. Mr. Wargo was admitted to the Court pro hac vice. Defendants County of Santa Clara, Santa Clara County Fairgrounds Management Corp., Inc., and the individual members of the Santa Clara County Board of Supervisors ("Defendants") were represented by the County Counsel's Office and attorney Paul A. Bruno of the law firm of Thelen, Marrin, Johnson & Bridges.

Based upon such addendum, Plaintiffs contend that Defendants have forbidden Plaintiffs access to a public forum—the Santa Clara County Fairgrounds—and have infringed upon Plaintiffs' Constitutional rights to free speech. Plaintiffs argue that Defendants' addendum cannot withstand judicial scrutiny and that Defendants must be enjoined from seeking to enforce the addendum.

Defendants contend that the addendum does not regulate speech but regulates only non-protected conduct. Defendants invite Plaintiffs to host a gun show on the premises of the Fairgrounds—Plaintiffs are simply forbidden from selling guns at the Fairgrounds. Plaintiffs are free to make whatever verbal or written comments they wish about guns at the Fairgrounds; they simply must sell the guns at a different location. Defendants point out that there are over 136 locations throughout Santa Clara County which sell guns. The gun show may display guns; permit speakers to voice their opinions about guns; pass out literature regarding guns, etc. Defendants contend that there are no regulations or prohibitions on speech regarding guns.

Defendants alternatively contend that, even assuming that the Court finds that the addendum prohibits a form of protected speech, that the addendum is constitutionally permissible because it places proper restrictions on purely commercial speech. Therefore, Defendants argue that Plaintiffs' motion for entry of a preliminary injunction must be denied.

### III. LEGAL STANDARDS

In the Ninth Circuit, in order to obtain a preliminary injunction, the moving party must show a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in its favor. *Atari Games Corp. v. Nintendo of America, Inc.*, 897 F.2d 1572, 1575 (Fed.Cir.1990); *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 (9th Cir. 1989).

### IV. DISCUSSION

#### A. Speech vs. Conduct

Plaintiffs move for entry of an injunction in this matter to prohibit Defendants from enforcing the new addendum to the County Fairgrounds lease on the bases that such addendum violates their First Amendment and Equal Protection rights as guaranteed in the United States Constitution. Pursuant to the Constitution, Plaintiffs

contend that their speech is protected and that Defendants cannot impose unlawful restrictions on such speech. Defendants argue that Plaintiffs are banned solely from the act of selling guns (i.e., conduct) and that, therefore, the addendum does not address constitutionally protected speech. Even assuming that the Court construes Plaintiffs' actions as involving protected speech, Defendants contend that the addendum is constitutionally permissible.

The first issue that the Court must address is whether the type of expression at issue herein constitutes speech or conduct. Although the evidence shows that Plaintiffs have been permitted to sell guns at their shows at the County Fairgrounds in the past, such evidence also shows that far more than simply a gun sale occurs at such shows. For instance, the shows also permit a forum for the exchange and debate of ideas regarding guns and gun control and offer an opportunity for candidates for political office to express their views on these important social issues. Plaintiffs contend that all of these actions which occur at their gun shows are constitutionally protected forms of speech.

Defendants do not dispute the fact that Plaintiffs' guns shows may offer benefits to the community. In fact, Defendants encourage the exchange of ideas and the offering of a forum at which political candidates may speak. Defendants point out that such activities are not banned by the addendum at issue herein. According to Defendants, the addendum only prohibits the *sale* of guns and does not restrict or prohibit the free exchange of ideas regarding such guns. The addendum simply requires that Plaintiffs sell their guns at a location other than the County Fairgrounds. According to Defendants' analysis, the addendum does not even address speech and seeks to regulate only a narrow aspect of Plaintiffs' conduct.

The Court cannot agree with Defendants' analysis regarding the addendum's attempt to regulate only conduct, however, since it is undisputed that some type of speech is necessarily involved in the sale of any gun. A gun may not be sold in silence, without any exchange of verbal communication whatsoever. Therefore, the Court rejects the argument that the selling of guns constitutes pure conduct and does not involve any type of speech.

### B. Commercial Speech Analysis

Having determined that some speech is necessarily involved in the sale of guns, the Court must next determine the type of speech involved in such transactions. The Supreme Court has determined that where speech "does no more than propose a commercial transaction" it is classified as "commercial speech" and is afforded some constitutional protection. *Pittsburgh Press Co. v. Human Relations Comm.*, 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973). In this action, Plaintiffs contend that more than simply a commercial transaction is involved in the gun sales at its shows. Plaintiffs argue that since many ideas, suggestions and political literature is exchanged in conjunction with the sale of guns at its shows, pure speech and commercial speech are "inextricably intertwined" and that, therefore, the entire category of speech attendant with a gun sale must be classified as noncommercial. A similar argument was raised by the defense in the case of *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989).

In *Fox*, the State University of New York passed a regulation banning private commercial enterprises from conducting business on the state campus. American Future Systems, Inc. ("AFS") is a company which sells various housewares to college students. AFS sells its wares through "tupperware parties", which consist of a prospective buyer who acts as a host or hostess and who gathers other prospective buyers together to listen to a demonstration about the product and to make purchases. The host or hostess then receives a gift for his or her organizational efforts.

AFS conducted a demonstration in a student's dormitory located on the state's campus and was arrested for violation of the state's regulation. AFS and the students involved file an action against the University for a violation of their First Amendment rights. The students claimed that they had the constitutional right to conduct "tupperware parties" in their dorm rooms if they so

desired since such "speech" was constitutionally protected. The Supreme Court found that the speech was protected, but only under the rubric of commercial speech.

The Court held that the fact that educational elements such as home economics was included in AFS' sales presentations did not convert such speech to noncommercial speech. The Court reiterated that "communications can constitute commercial speech notwithstanding the fact that they contain discussions of important public issues.... We have made clear that advertising which 'links a product to a current public debate' is not thereby entitled to the constitutional protection afforded noncommercial speech." *Fox, supra* at page 475, 109 S.Ct. at page 3032.

■ The *Fox* Court then noted the analysis to be applied when analyzing the lawfulness of restrictions placed on commercial speech. As set forth in *Central Hudson Gas & Electric Corp. V. Public Service Comm'n of New York,* 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980), such speech must concern lawful activity and must not be misleading. If the speech at issue fulfills these requirements, then the court must determine whether the asserted governmental interest is substantial. If there is a substantial governmental interest, then the court must determine whether the regulation directly advances the governmental interest asserted and whether it is not more extensive than is necessary to serve that interest. *Id.*

The Court finds that the *Fox* holding is instructive in this case. The simple fact that the gun sales which occur at Plaintiffs' shows may involve types of speech which are afforded constitutional protection does not mean that the actual sale of guns is afforded constitutional protection. As in *Fox*, the Court finds that the speech which occurs at Plaintiffs' gun show sales constitutes commercial speech.

Since the Court finds that the addendum at issue which bans the sale of guns at Plaintiffs' gun shows involves a prohibition on commercial speech, it must now determine the constitutional analysis to be applied to test the validity of the addendum. As the Court pointed out in *Rubin v. Coors Brewing Co.,* — U.S. —, — – —, 115 S.Ct. 1585, 1587–88, 131 L.Ed.2d 532 (1995), the mere fact that messages propose commercial transactions does not dictate the constitutional analysis that should apply to decisions to suppress them.

In this instance, the addendum does not seek to regulate "pure" speech but addresses only speech which occurs as an adjunct to the sale of a gun. As such, the Court finds that it is appropriate to apply the analysis enunciated by the Supreme Court in *Central Hudson* which discusses the standard for constitutionally permissible regulations regarding commercial speech.

To summarize, the *Central Hudson* analysis requires that the Court determine whether the speech is truthful and is not misleading. If the speech is truthful and does not mislead, then the Court must determine if a substantial governmental interest exists regarding the necessity for the regulation. If such an interest exists, then the Court determines whether the regulation directly advances the governmental interest and whether the regulation is not more extensive than necessary to achieve the interest. The Court now applies this analysis to the evidence submitted in this case.

### 1. Lawful/Misleading Activity

The evidence submitted to the Court with respect to Plaintiffs' motion for entry of a preliminary injunction shows that the speech involved in the sale of guns at Plaintiffs' shows involves lawful activity. As noted, Plaintiffs have conducted shows in the past at the Fairgrounds without incident. Nor has there been evidence presented to the Court which indicates that the speech involved in the sale of guns is in any way misleading. Presumably, no complaints have been filed against Plaintiffs as a result of their prior sales of guns at the Fairgrounds. Having found that the speech attendant to the sale of guns is lawful and is not misleading, the Court must next analyze whether the asserted governmental interest is substantial in this instance.

### 2. Substantial Government Interest

Plaintiffs contend that the County has no interest, much less a substantial interest, in

prohibiting the sale of firearms on the Fairgrounds. Plaintiffs base their contention on the allegation that the County considered no objective evidence that there is a "substantial governmental interest" at stake herein in passing the addendum at issue. Plaintiffs argue that the County Board members simply superimposed their own personal viewpoints regarding gun sales and the "image" of the County which they wish to project and concluded that there is a substantial governmental interest in banning gun sales at the Fairgrounds.

Defendants counter that it is not necessary for the Board to base its decision to ban gun sales at the Fairgrounds on empirical data but may rest its decision on rational speculation and the County's perceived health, safety and welfare of its citizens. *Posadas de Puerto Rico Associates v. Tourism Company of Puerto Rico,* 478 U.S. 328, 341, 106 S.Ct. 2968, 2976–77, 92 L.Ed.2d 266 (1986); *National Paint & Coatings v. City of Chicago,* 45 F.3d 1124, 1127 (7th Cir.1995). Prior to its passage of the addendum, the Board heard the testimony of Dina Dickinson, the Executive Director of Public Health, and Dick de la Rosa, Mayor Hammer's Gang Policy Manager, regarding the fact that the proliferation of guns has created an alarming public health and fiscal crisis for the County of Santa Clara.

In response to Defendants' arguments, Plaintiffs point out that four Supreme Court Justices recently criticized the *Posadas* conclusion regarding a governmental body's discretion to suppress truthful, nonmisleading information for paternalistic purposes. *See, 44 Liquormart, Inc. v. Rhode Island,* —— U.S. ——, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996). Therefore, Plaintiffs contend that the Court should disregard the *Posadas* holding in this case.

The *44 Liquormart* case struck down the state of Rhode Island's attempt to ban accurate information regarding retail prices of alcoholic beverages. Four Justices in *Liquormart* criticized the *Posadas* holding for the proposition that the price advertising ban should be permitted because it targets commercial speech which pertains to a "vice" activity. The Supreme Court refused to rec-

ognize a "vice" exception to the commercial speech doctrine. *See, Rubin v. Coors Brewing Co.,* —— U.S. ——, ——, 115 S.Ct. 1585, 1589, 131 L.Ed.2d 532 (1995).

The *Liquormart* Court did not overrule the holding in *Posadas* and the Court finds that it may rely on the *Posadas* holding for the proposition that the County may act in the absence of empirical evidence when it rationally perceives a threat to the health, welfare and benefit of its citizens. However, there has been no evidence presented to the Court which shows that the Board acted in response to a perceived threat to the County's health or welfare when it passed the ban on gun sales at the Fairgrounds. Absolutely no evidence was presented to the Board which suggested any need to curtail gun sales at that location. There have been no problems associated with Plaintiffs' gun shows, or any gun shows, held at the Fairgrounds. There is no evidence of any unlawful activity occurring at such shows. In fact, if a gun is purchased a such a show, it does not actually exchange hands until the requisite waiting period has expired, some fifteen or more days after the show.

Although the Board was presented with some testimony regarding the fact that the sale of guns creates a health and financial crisis for the County, such testimony was not in any way directed to the sale of guns at the Fairgrounds. There is absolutely no evidence in the record as to why the Board chose to target the Fairgrounds as a place to ban gun sales and yet allows such guns to be sold down the street.

For the reasons stated above, the Court finds that the County has not articulated a substantial government interest in banning gun sales at the County Fairgrounds. Therefore, the addendum is unconstitutional and cannot be enforced until the conclusion of this action.

### 3. Advancement/Extensiveness

Even assuming that the County had articulated a substantial governmental interest in banning gun sales at the Fairgrounds, the Court would have to consider whether the ban directly advances the governmental interest asserted and whether such ban is not

more extensive than necessary to serve that interest. *Central Hudson, supra* at 566, 100 S.Ct. at 2351. In order to evaluate whether the ban on gun sales at the Fairgrounds directly advances the County's interest in protecting the safety and welfare of its citizens, the Court must determine whether the ban provides effective or direct support for the government's interest. *Id.*

In this case, there is no evidence that the ban on gun sales at the Fairgrounds would curtail the possession of firearms on the County's premises. In addition, as noted above, the ban is not narrowly tailored to achieve the ends desired since the guns are not even exchanged at the Fairgrounds but at a much later date. By banning gun sales only at the Fairgrounds, the Board achieves nothing in the way of curtailing the overall possession of guns in the County.

As noted above, the ban does not restrict gun sales in any of the over 100 distributorships throughout the County. The County simply wishes to portray a "weapons-free" image at its Fairgrounds, however, such an image is not created by banning gun sales since the sales do not permit any exchange of the guns on the property owned by the County. Even with the ban, prospective buyers can examine the merchandise and discuss the prospective sale with Plaintiffs at the Fairgrounds during the operation of Plaintiffs' shows. Therefore, the Court does not find that the addendum directly advances the governmental interest asserted and finds that it is more extensive than necessary to achieve such interest.

## V. CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiffs' motion for entry of a preliminary injunction. The Court finds that the addendum to the County Fairgrounds lease provision which bans gun sales on the premises of the County Fairgrounds is not constitutionally permissible and violates Plaintiffs' constitutional rights. Plaintiffs are free to conduct their gun shows at the Fairgrounds and may sell guns at such shows. Based on the reasons set forth in this Order, the Court finds that Plaintiffs are likely to succeed on the merits of their constitutional

challenge to the addendum at trial and that the balance of hardships tip sharply in their favor. Therefore, the claim for injunctive relief is granted. Defendants may not enforce the addendum pending the outcome of this litigation. The parties are ordered to file briefs on or before July 22, 1996 addressing why this preliminary injunction should not be made permanent.