O’MALLEY, Circuit Judge,
concurring-in-part, dissenting-in-part.
I concur in the majority’s decision to affirm the denial of preliminary injunctive relief with respect to Apple’s two smart-phone design patents and its utility patent. Although I might have weighted Apple’s evidence of irreparable harm regarding its smartphones differently had I been considering it in the first instance, I agree that we should defer to the district court’s findings on that issue. I also agree with the majority that the district court erred in its analysis of the validity of Apple’s tablet computer design patent — U.S. Design Patent No. D504,889 (“the D'889 Patent”). I disagree, however, with the majority’s decision to remand that portion of the case for further proceedings; on that point, I respectfully dissent.
Specifically, as explained below, the majority’s decision to remand this matter for further proceedings relating to the D'889 Patent is unwarranted because: (1) remand will cause unnecessary delay, which is inconsistent with the very purpose of *1334 preliminary injunctive relief; and (2) once we reject its validity analysis, the district court’s decision, taken in its entirety, reveals that all of the prerequisites for preliminary injunctive relief are satisfied. Remand is particularly inappropriate where, as here, both this court and the district court agree that Apple will suffer irreparable harm absent injunctive relief. The majority’s decision to remand for further proceedings will only exacerbate that harm.
Based on the record at this stage of the proceedings, the only remand appropriate in this case is for entry of a preliminary injunction with respect to the D'889 Patent and for consideration of an appropriate security bond. Accordingly, I dissent from the portion of the majority’s decision remanding the D'889 Patent for further proceedings.
I. Preliminary Injunctions Are Designed to Provide Expedited Relief.
Rule 65 of the Federal Rules of Civil Procedure governs the entry of a preliminary injunction. Under this Rule, district courts have discretion to provide expedited relief where certain criteria are satisfied. It is well-established that a preliminary injunction is an extraordinary remedy reserved only for those cases where it is clearly warranted. See Atari Games Corp. v. Nintendo of Am., Inc., 897 F.2d 1572, 1578 (Fed.Cir.1990) (“The granting of a preliminary injunction is an extraordinary remedy.”); see also Leary v. Daeschner, 228 F.3d 729, 739 (6th Cir.2000) (noting that a “preliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in [the] limited circumstances which clearly demand it” (internal citation and quotation omitted)).
Although it is a drastic remedy, preliminary injunctive relief exists for a reason: to provide “speedy relief from irreparable injury.” Ross-Whitney Corp. v. Smith Kline & French Labs., 207 F.2d 190, 198 (9th Cir.1953) (“one of the purposes of a preliminary injunction ... is to give speedy relief from irreparable injury”). Consistent with this purpose, “[preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs’ rights.” Citibank, N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir.1985). Indeed, the text of Rule 65 explains that proceedings initiated under the Rule are to be expedited. Simply, a preliminary injunction is an important vehicle through which a court can prohibit a party’s alleged wrongful or illegal conduct prior to a final determination on the merits in order to prevent harm that cannot be compensated by monetary damages. See 13 James Wm. Moore, Moore’s Federal Practice § 65.02[2] (3d ed. 2011) (“The purpose of injunctive relief is to prevent future harm.”).
The majority’s decision today effectively eviscerates the purpose of Rule 65 by causing unwarranted delay and thus contributing to Apple’s irreparable harm. While we, of course, must be cautious about granting the extraordinary relief that a preliminary injunction represents, where, as here, the record fully supports such a remedy, we must not hesitate to do so. The availability of injunctive relief is particularly important in the patent context, where patent holders undoubtedly have the right to exclude others from using their intellectual property without permission. See 35 U.S.C. § 154(a)(1) (“Every patent shall contain ... a grant to the patentee ... of the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States ... ”). Indeed, courts have an obligation to grant injunctive relief to protect against theft of property — including intellectual property — where the moving *1335 party has demonstrated that all of the predicates for that relief exist. As discussed below, on this record, further delay is neither necessary nor appropriate.
II. Injunctive Relief as to the D'889 Patent is Warranted on this Record.
When ruling on a motion for a preliminary injunction, a district court must consider and analyze four factors: (1) whether the movant is likely to succeed on the merits; (2) whether the movant is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of hardships; and (4) whether issuance of an injunction is in the public interest. Celsis In Vitro, Inc. v. CellzDirect, Inc., 664 F.3d 922, 926 (Fed.Cir.2012) (citing Abbott Labs, v. Sandoz, Inc., 544 F.3d 1341, 1344 (Fed.Cir.2008)). Where the movant carries its burden as to each of the four prerequisites, a preliminary injunction should issue. See AstraZeneca LP v. Apotex, Inc., 633 F.3d 1042, 1049 (Fed.Cir.2010).
As the majority acknowledges, because the district court found a substantial question as to the validity of the D'889 patent, it did not make any findings with regard to the balance of hardships and the public interest. Given this apparent deficiency, the majority argues that remand is necessary because it generally is inappropriate for this court to conduct these factual inquiries for the first time on appeal. In support of this proposition, the majority relies on two cases — eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006) and Acumed LLC v. Stryker Carp., 483 F.3d 800 (Fed.Cir.2007) — both of which are factually distinguishable because the lower courts were applying something other than the traditional four-factor test for preliminary injunctive relief.
For example, in eBay, the Supreme Court rejected this court’s “general rule ... that a permanent injunction will issue once infringement and validity have been adjudged” and remanded the case for the district court to apply the four-factor framework “in the first instance.” eBay, 547 U.S. at 393-94, 126 S.Ct. 1837.[1] Likewise, in Acumed, we noted that the district court applied the pre-eBay presumption that, in patent cases, “an injunction will issue, once infringement and validity have been adjudged ... unless there are some exceptional circumstances that justify denying injunctive relief’ and remanded the case for the district court to apply the four-factor test. Acumed 483 F.3d at 811 (quotations and citation omitted). These cases support the proposition that remand is necessary where the district court applied the incorrect preliminary injunction framework and, consequently, the record was not developed as to each of the relevant factors. In those circumstances, the parties had no incentive to develop a proper record to which the correct framework could be applied, and the court had no reason to reflect its views on them.
Unlike the lower courts in eBay and Acumed, here, the district court fully un *1336 derstood the proper four-factor framework and discussed its views of those factors repeatedly. While it did not expressly address the balance of hardships and public interest when discussing the D'889 Patent, the district court’s discussion of those factors elsewhere in its decision applies with equal force to the D'889 Patent. Those findings, when coupled with the district court’s conclusions that: (1) Apple is highly likely to establish infringement of the D'889 Patent at trial; and (2) Apple has a strong argument that it will suffer irreparable harm absent an injunction against the Galaxy Tab 10.1, warrant an order from this court directing entry of an injunction as to further sales of Samsung’s tablets. In other words, in this case, there is a complete record from which we can review the district court’s analysis as to each of the four factors, and that review leads to one firm conclusion — that an injunction as to the D'889 Patent should be entered, and should be entered now.[2]
A. Likelihood of Success
As to Apple’s likelihood of success on the merits, the district court found that Samsung raised a substantial question as to the validity of the D'889 Patent on obviousness grounds. For the reasons stated in the majority opinion, I agree that this finding was in error. Despite this error with respect to validity, the district court conducted an infringement analysis and found that Apple is likely to establish that the Galaxy Tab 10.1 is substantially similar to Apple’s D'889 Patent in the eyes of an ordinary observer. Specifically, the court compared the Galaxy Tab 10.1 to Apple’s iPad and iPad 2, and concluded that the Galaxy Tab is “virtually indistinguishable” from Apple’s iPad products. Apple, Inc. v. Samsung Elees. Co., No. 11-cv-1846, 2011 WL 7036077, at *28, 2011 U.S. Dist. LEXIS 139049, at *90-91 (N.D.Cal. Dec. 2, 2011). Because Samsung created a device that is likely to deceive an ordinary observer making purchasing decisions, the district court expressed little doubt that Apple likely would succeed on its infringement claim.
B. Irreparable Harm
As to irreparable harm, the district court considered Samsung and Apple’s respective market shares and found that “there appear to be fewer players in the tablet market.” Apple, 2011 WL 7036077, at *29, 2011 U.S. Dist. LEXIS 139049, at *93-94. This factor is significant because, as the district court noted, we recently indicated that “the existence of a two-player market may well serve as a substantial ground for granting an injunction ... because it creates an inference that an infringing sale amounts to a lost sale for the patentee.” Robert Bosch LLC v. Pylon Mfg. Corp., 659 F.3d 1142, 1151 (Fed.Cir.2011) (emphasis in original). Indeed, the district court pointed to evidence that Apple’s tablet sales decreased while Samsung’s newly-introduced tablet gained market share. Thus, the court concluded that a sale to Samsung translates to a lost sale to Apple.
The district court also found — and Samsung conceded — that there is a “high degree of brand loyalty to Apple, which discourages Apple purchasers from switching to other brands.” Apple, 2011 WL 7036077, at *20, 2011 U.S. Dist. LEXIS 139049, at *64. This high level of loyalty has serious implications for downstream *1337 purchases and “makes the initial decision regarding which product to purchase even more important because the potential customers that Apple loses to Samsung may have long-term effects that are difficult to calculate and may not be recaptured.” Id. As the district court correctly noted, Apple could lose sales of tag-along products including apps, other Apple devices, and future models of its products. Although the district court discussed downstream implications in the context of the smartphone patents, these concerns apply to all of Apple’s iconic products, including the iPad. Because the loss of customers and the loss of future downstream purchases are difficult to quantify, these considerations support a finding that monetary damages would be insufficient to compensate Apple.
Continuing its irreparable harm analysis, the district court also found that “Apple has established that design is an important driver in demand for tablets.” Apple, 2011 WL 7036077, at *29, 2011 U.S. Dist. LEXIS 139049, at *94. Given the substantial similarities between the parties’ products, the court concluded that this evidence supports Apple’s argument that consumers are likely to be induced to purchase the Galaxy Tab 10.1 instead of the iPad.
Based on these factors, the district court found that Apple established a strong likelihood of irreparable harm absent injunctive relief. I agree with the majority that the district court did not abuse its discretion in reaching this conclusion.[3]
C. Balance of Hardships
Although the district court did not address the balance of hardships and public interest in conjunction with the D'889 Patent, its discussion of those factors in relation to Apple’s other patents supports entry of an injunction as to Samsung’s tablet.[4] Specifically, with respect to the smartphone patents, the district court found that the balance of hardships favored Samsung because: (1) the court considered infringement of the D'677 Patent to be a “close question”; and (2) it was not clear that an injunction against Samsung’s accused devices would prevent Apple from suffering irreparable harm. Apple, 2011 WL 7036077, at *23, 2011 U.S. Dist. LEXIS 139049, at *74. This indicates that where, as with the D'889 Patent, the issue of infringement is not close, and there is evidence of irreparable harm which would necessarily cease with an injunction, the district court would find the balance favors Apple.
Likewise, as to Apple’s utility patent, the district court concluded that Apple was likely to withstand a validity challenge but that it offered no evidence of irreparable harm. Despite the lack of irreparable harm, the trial court still found that the balance of hardships factor would favor Apple because Apple had successfully shown that its patent was likely valid and infringed and, thus, had an interest in enforcing its patent. Again, this makes clear that where, as here, Apple has not only shown that its patent is likely valid and infringed, but has established likelihood of irreparable harm, the balance of *1338 hardships would surely weigh in Apple’s favor.
Given our conclusion that the district court erred in finding a substantial question as to the validity of the D'889 Patent, we are left with evidence that the D'889 Patent is likely valid and infringed, and with clear evidence of irreparable harm. Drawing from the district court’s analysis with respect to Apple’s utility patent, the balance of hardships weighs in Apple’s favor because it has an interest in enforcing its patent rights. And, the district court’s conclusion that the Galaxy Tab 10.1 clearly infringes the D'889 Patent, coupled with some evidence that Samsung altered its design to make it look like Apple’s, further tips the balance of hardships against Samsung. See Sunburst Prods., Inc. v. Derrick Law Co., 922 F.2d 845, 1991 WL 1523, at *5,1991 U.S.App. LEXIS 352, at *16-17 (9th Cir. Jan. 9, 1991) (noting that, “in issuing the injunction, the court held that Advance had intentionally copied the SHARK watch” and that, although there was no direct evidence of copying, “similarity can be probative of intentional copying” such that the court “did not abuse its discretion in making the inference and asking Advance to rebut it”). This is particularly true given evidence that Apple spent significant sums to develop and promote its iPad design, promotion activities which will continue to inure to Samsung’s benefit given the identity of the products.
D. Public Interest
With respect to the smartphone patents, because it found the question of infringement to be a close one, the district court found that the public’s interest in the protection of patent rights “is counterbalanced by Samsung’s continuing right to compete, which must be viewed as legitimate at this stage in the process.” Apple, 2011 WL 7036077, at *24, 2011 U.S. Dist. LEXIS 139049, at *76. Accordingly, the court held that the public interest did not weigh strongly in either party’s favor. In contrast, as to Apple’s utility patent — which the district court found likely valid and very likely infringed — the court concluded that the public interest favors Apple because the public has an interest in protecting patent rights. Applying those conclusions to the D'889 Patent is simple: where the infringement question is not close and likely validity has been shown, the public interest weighs in favor of the patent holder.
As this court has recognized, “[ajlthough the public interest inquiry is not necessarily or always bound to the likelihood of success o[n] the merits, ... absent any other relevant concerns ... the public is best served by enforcing patents that are likely valid and infringed.” Abbott Labs. v. Andrx Pharm., Inc., 452 F.3d 1331, 1348 (Fed.Cir.2006). So too here, because the record at this stage shows that the D'889 Patent is likely valid and infringed, and there are no other relevant concerns, the public interest is best served by granting a preliminary injunction.
III. Conclusion
For the foregoing reasons, although I agree with the majority as to resolution of Apple’s appeal from the district court’s refusal to enter an injunction relating to Apple’s smartphone patents and utility patent, I would remand for entry of a preliminary injunction with respect to the D'889 Patent. Given the record in this case, when balancing which of the two parties should be left with the prospect of only receiving money damages (however insufficient such damages might be) — the patent holder or the alleged infringer — it is clear that the answer should be Samsung.
Under this approach, Samsung would, of course, be protected by the entry of a substantial bond. Indeed, Rule 65(c) pro *1339 vides that a court can issue a preliminary injunction “only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.” This bond requirement is designed to protect the enjoined party’s interests in the event that future proceedings show the injunction issued wrongfully. See Edgar v. MITE Corp., 457 U.S. 624, 649, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982) (Stevens, J., concurring) (“Since a preliminary injunction may be granted on a mere probability of success on the merits, generally the moving party must demonstrate confidence in his legal position by posting bond in an amount sufficient to protect his adversary from loss in the event that future proceedings prove that the injunction issued wrongfully.”); see also Piambino v. Bailey, 757 F.2d 1112, 1143 (11th Cir.1985) (noting that “Rule 65(c)’s bond requirement ... was intended by Congress to protect enjoined parties from the losses that result from improvidently granted injunctions” (citation omitted)). Because the district court has broad discretion to determine the amount of the bond, I would remand for the district court to consider an appropriate amount to protect Samsung’s interests, but order entry of an injunction without any further proceedings. See Gateway E. Ry. Co. v. Terminal R.R. Ass’n, 35 F.3d 1134, 1141 (7th Cir.1994) (stating that Rule 65(c) “makes security mandatory ... but also anticipates the exercise of discretion in determining the amount of the bond to be posted” (citations omitted)).
Because the majority’s decision to remand the D'889 Patent for further proceedings will cause unnecessary delay and will only contribute to the irreparable harm that both the district court and this court agree Apple will suffer absent injunctive relief, I dissent from that portion of the opinion.

. The Supreme Court in eBay separately rejected the district court's approach, which "appeared to adopt certain expansive principles suggesting that injunctive relief could not issue in a broad swath of cases.” 547 U.S. at 393, 126 S.Ct. 1837 (emphasis added). For example, the district court concluded that a “plaintiff's willingness to license its patents and its lack of commercial activity in practicing the patents would be sufficient to establish that the patent holder would not suffer irreparable harm if an injunction did not issue.” Id. (internal citations and quotations omitted). The Supreme Court found that "traditional equitable principles do not permit such broad classifications” and that the district court's categorical rule "cannot be squared with the principles of equity adopted by Congress.” Id.

. Although district court judges are given discretion in determining whether to grant injunctive relief — and they certainly prefer that we defer to their discretion in appropriate circumstances — district judges do not prefer remands that unnecessarily multiply the proceedings. This is especially true where, as here, the record is sufficient to inform us as to how the district court would exercise its discretion given the current state of the law.

. As the district court and the majority agree, delay was not an issue with respect to the D'889 Patent. Indeed, the Galaxy Tab 10.1 was released in June 2011, less than one month before Apple filed its motion for a preliminary injunction.

. It is unwise for a district court to render a decision on a motion for preliminary injunction before completing its assessment of each of the four relevant factors. Indeed, this case evidences how a failure to undertake this basic and important exercise can itself cause unwarranted delay in the proceedings and harm to one or more of the parties.