**SOFAMOR DANEK GROUP, INC.,**
**Plaintiff–Appellant,**

v.

**DePUY–MOTECH, INC.,**
**Defendant–Appellee.**

**No. 95–1209.**

United States Court of Appeals,
Federal Circuit.

Jan. 24, 1996.

---

1218

Spiro Bereveskos, Woodard, Emhardt, Naughton, Moriarty & McNett, of Indianapolis, Indiana, argued for plaintiff-appellant. With him on the brief were Charles R. Reeves, Michael D. Beck and Timothy N. Thomas.

Donald E. Knebel, Barnes & Thornburg, of Indianapolis, Indiana, argued for defendant-appellee. With him on the brief was Mark D. Janis.

Before NEWMAN, RADER, and BRYSON, Circuit Judges.

RADER, Circuit Judge.

On December 29, 1994, the United States District Court for the Southern District of Indiana denied Sofamor Danek Group, Inc.'s (Sofamor) motion for a preliminary injunction against DePuy–Motech, Inc. (DePuy–Motech). Because Sofamor did not meet its burdens of proof, this court affirms.

## BACKGROUND

Sofamor owns three patents, U.S. Patent Nos. 4,641,636, 4,815,453, and 5,005,562, on surgical implant devices to correct deformities or traumas in the human spine. The patent at issue is U.S. Patent No. 5,005,562 (the '562 patent). Sofamor and DePuy–Motech compete in the spinal implant business. DePuy–Motech introduced a competing product, the MOSS–MIAMI spinal implant device, in the United States market.

Both the invention of the '562 patent and the MOSS–MIAMI device are used in spinal surgery. This technology essentially implants rigid rods to straighten or support a deformed spine. Both the patented invention and the MOSS–MIAMI device comprise an anchoring hook implant with an open back into which the surgeon may place the rod. A threaded plug secures the rod. In the MOSS–MIAMI device, an external nut further secures the threaded plug.

Sofamor filed an action alleging that De-Puy–Motech infringed their three spinal im-

plant patents. Sofamor then moved for a preliminary injunction on the '562 patent to stop DePuy–Motech from the allegedly infringing activity. DePuy–Motech asserted invalidity and unenforceability defenses as well as patent misuse.

Sofamor and DePuy–Motech dispute whether the MOSS–MIAMI device infringes claim 1 of the '562 patent. The claim states:

Implant for an osteosynthesis device, in particular of the spine, comprising anchorage portion means for anchoring the implant to bone and **body attaching means** for attaching the implant to a rod, said body attaching means having two side branches defining a channel open at both sides of the body attaching means in order to be able to receive the rod and open to a rear portion of the body attaching means, and **a threaded plug**, a female thread formed in inner walls of said two side branches at the rear portion of the body attaching means, said threaded plug being screwed into said female thread to close the channel at said rear portion, the plug having a face directed towards the rod said facing being equipped with means for gripping and attaching the plug to the rod in a manner in which the rod will be clamped to prevent translation and rotation.

Col. 4, 11. 14–29 (emphasis added).

In December 1994, the trial court held a three-day hearing receiving testimony from several witnesses. The court denied Sofamor's motion for preliminary injunction. In reaching its decision, the trial court construed the claims of the '562 patent. From the specification, prosecution history, and extrinsic evidence the court determined that a device fitting within the meaning of "body attaching means" would: ·

1.  use less than three parts to attach the rod to the spine;

2.  have a body attaching means connected to an anchoring device, the rear portion of which has a channel or groove, open to the back;

3.  have a body attaching means that is formed by two smooth-sided branches containing threads on their inner walls, into which a single threaded plug is tightened to close the channel; and

4.  use a plug that is equipped with something that enables it to lock the rod against movement in three different directions.

*Sofamor Danek Group, Inc. v. DePuy–Motech, Inc.,* No. IP94–350–C, 1994 WL 846541, at *6 (S.D.Ind. Dec. 29, 1994).

Based on this claim reading, the trial court found that Sofamor did not prove the likelihood of success on patent infringement or validity. Further, Sofamor did not offer evidence to support a finding of irreparable harm. Without a showing on these two prongs, the court did not balance hardships on the parties or assess the impact of an injunction on the public interest. Sofamor appeals to this court.

## DISCUSSION

■ The grant of a preliminary injunction is within the trial court's discretion. To overturn the denial of a preliminary injunction, an appellant must show both that the trial court relied on clearly erroneous factors and abused its discretion. *Reebok Int'l Ltd. v. J. Baker, Inc.,* 32 F.3d 1552, 1555, 31 USPQ2d 1781, 1783 (Fed.Cir.1994); *New England Braiding Co. v. A.W. Chesterton Co.,* 970 F.2d 878, 882, 23 USPQ2d 1622, 1625 (Fed.Cir.1992).

■ To be entitled to a preliminary injunction, a movant must show: (1) a reasonable likelihood of success on the merits, (2) an irreparable harm, (3) the balance of hardships tipping in its favor; and (4) a tolerable effect on the public interest. *Hybritech Inc. v. Abbott Labs.,* 849 F.2d 1446, 1451, 7 USPQ2d 1191, 1195 (Fed.Cir.1988). The court must balance these factors against one another and against the extent of the relief sought. *Id.* The movant bears the burden of proving entitlement to relief. *Reebok Int'l,* 32 F.3d at 1555.

■ Central to the movant's burden are the likelihood of success and irreparable harm factors. *Id.* at 1556. A movant must first show a reasonable likelihood of success on the merits. Under 35 U.S.C. § 283, this showing requires proof on both validity and infringement. *Hybritech,* 849 F.2d at 1451.

■ To determine likelihood of success on the patent infringement issue, the court may construe disputed claim language as a matter of law. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 978, 34 USPQ2d 1321, 1328 (Fed.Cir.), *cert. granted,* —— U.S. ——, 116 S.Ct. 40, 132 L.Ed.2d 921 (1995). The court then determines whether the accused device is likely to fall within the scope of the claims. *H.H. Robertson Co. v. United Steel Deck, Inc.,* 820 F.2d 384, 389, 2 USPQ2d 1926, 1929 (Fed.Cir.1987). To infringe, an accused device must embody each claim limitation or its equivalent. *Charles Greiner & Co. v. Mari–Med Mfg., Inc.,* 962 F.2d 1031, 1034, 22 USPQ2d 1526, 1528 (Fed. Cir.1992).

Likelihood of success on infringement thus depends on the meaning of disputed claim terms supplied by the court. In ascertaining this meaning, the parties dispute the meaning of two claim terms: the "body attaching means" and the "threaded plug." The "body attaching means" element claims, in means-plus-function form, a structure to attach the implanted anchor to the rod.

■ Section 112, ¶ 6 of title 35 sets forth the method of construing means-plus-function claims. Specifically, the court construes the means-plus-function language to encompass the structure, material, or acts described in the specification and equivalents thereof. *See* 35 U.S.C. § 112, ¶ 6 (1988); *In re Donaldson Co.,* 16 F.3d 1189, 1193, 29 USPQ2d 1845, 1848 (Fed.Cir.1994).

■ A resort to the '562 specification discloses several disadvantages of the prior art of spine reformation technology. For example, the prior art included a "multiplicity and complexity of the elements" resulting in "awkward bulkiness". U.S. Patent No. 5,005,562, col. 1, 11. 30–33. To overcome these disadvantages, the '562 patent disclosed only a threaded plug screwed into a "female thread formed in the inner walls of the two side branches" of the attaching means. This simple structure ensured that the implant has "minimum bulk." *Id.,* col. 1, 11. 40–42, 48–50. This structure also had the virtue of reducing the parts compared to an implant "provided with a plug and a separate locking screw." *Id.,* col. 3, 11. 64–67. Thus,

the specification expressly excluded from the meaning of "body attaching means" a structure with a separate locking screw. *Id.* This description in the specification provides the structure to define the limits of "body attaching means" in the patent.

In contrast to the '562 patent, the MOSS–MIAMI device has a bulky, external nut as a separate locking screw that fits over the threaded plug. DePuy–Motech included this nut to provide stability. The specification of the '562 patent defines the "body attaching means" as expressly excluding a structure with a separate locking screw. The MOSS–MIAMI device includes a separate locking screw and is thus different from the structure covered by the term "body attaching means" in the '562 patent. The trial court was well within its province to determine that Sofamor did not show a reasonable likelihood of success on infringement of the "body attaching means" limitation.

■ In addition to examining the claim and specification, the trial court expanded the search for claim meaning to encompass prosecution history on "body attachment means." Moreover this search caused the trial court to improperly import limitations from the prosecution history and overly constrict the meaning of "body attaching means". The trial court gave undue weight to statements during prosecution of the '562 patent. The prior art locked the rod inside an anchoring member with "at least one and preferably two additional locking elements." To distinguish this prior art, the patentee characterized the prior art system as requiring "at a minimum three distinct elements." From these statements, the trial court concluded that an accused device would literally infringe the '562 patent only if it used "less than three parts to attach the rod to the spine." *Sofamor Danek Group,* 1994 WL 846541, at * 6. This history, however, merely distinguishes the claimed invention from a prior art reference with at least three parts. Neither the specification nor the claims restrict the "body attaching means" to less than three parts. Similarly, the specification contains no language specifying that the "body attaching means" include two smooth-

sided branches as dictated by the trial court's third numbered requirement.

The parties also disputed the meaning of the "threaded plug" limitation. The threaded plug, per the claim, has a "face directed towards the rod said face being equipped with means for gripping and attaching the plug to the rod in a manner in which the rod will be clamped to prevent translation and rotation." The trial court found that the MOSS–MIAMI threaded plug does not penetrate the rod.

DePuy–Motech's MOSS–MIAMI device uses a threaded plug unlike the one in the '562 patent. The face of the threaded inner plug in the MOSS–MIAMI device is smooth, flat, and reversible. Unlike the '562 patented invention, the MOSS–MIAMI device does not appear to grip and attach to the rod through the face of the inner screw.

The evidence presented at the preliminary injunction hearing is contradictory on this point, however. Dr. Ashman, Sofamor's expert, testified that the threaded plug penetrates the rod. Mr. Derner, DePuy–Motech's expert, testified that the MOSS–MIAMI device does not penetrate the rod, but uses friction to keep the plug in place. The trial court will have a full opportunity to resolve this factual dispute during trial.

The trial court properly determined that Sofamor has not shown a reasonable likelihood of success in proving that the MOSS–MIAMI device exactly embodies each claim limitation or its equivalent. *Charles Greiner*, 962 F.2d at 1034. As such, the court's constrained interpretation of the term "body attaching means" is harmless.

Under Fed.R.Civ.P. 61, this court "disregard[s] any error or defect in the proceeding which does not affect the substantial rights of the parties." Fed.R.Civ.P. 61; *see also Richdel, Inc. v. Sunspool Corp.*, 714 F.2d 1573, 1580, 219 USPQ 8, 12 (Fed.Cir. 1983).

Moreover, the trial court has no obligation to interpret claim 1 conclusively and finally during a preliminary injunction proceeding. Under *Markman*, claim interpretation is a matter of law. *Markman*, 52 F.3d at 978. However, *Markman* does not obligate the

trial judge to conclusively interpret claims at an early stage in a case. A trial court may exercise its discretion to interpret the claims at a time when the parties have presented a full picture of the claimed invention and prior art. *Illinois Tool Works, Inc. v. Grip–Pak, Inc.*, 906 F.2d 679, 681, 15 USPQ2d 1307, 1309 (Fed.Cir.1990) (referring to a preliminary injunction "hearing in which neither party was required to prove his case in full and in light of findings and conclusions *not binding* at trial." (emphasis added)); *Atari Games Corp. v. Nintendo of Am., Inc.*, 897 F.2d 1572, 1575, 14 USPQ2d 1034, 1036 (Fed. Cir.1990) ("The district court need not make binding findings of fact, but at the very least, must find probabilities that the necessary facts can be proved."); *Black & Decker, Inc. v. Hoover Serv. Ctr.*, 886 F.2d 1285, 1296 n. 16, 12 USPQ2d 1250, 1259 n. 16 (Fed.Cir. 1989) ("Decisions on preliminary relief do not preclude trial on the merits ... though preclusion may be appropriate when the evidence is the same....").

## DOCTRINE OF EQUIVALENTS

Absent a finding of literal infringement, the trial court can find that an accused device infringes by applying the doctrine of equivalents. *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 797–98, 17 USPQ2d 1097, 1100–01 (Fed.Cir.1990). An accused product that does not literally infringe a claim may infringe if it has insubstantial changes from the patented device. *Hilton Davis Chem. Co. v. Warner–Jenkinson Co.*, 62 F.3d 1512, 1518–19, 35 USPQ2d 1641, 1645–46 (Fed.Cir.1995).

To determine an equivalent under the doctrine, the court examines:

the context of the patent, the prior art, and the particular circumstances of the case. Equivalence, in the patent law, is not the prisoner of a formula and is not an absolute to be considered in a vacuum.... An important factor is whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was.

*Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 609, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950). This court has recently acknowledged this principle. *Hilton Davis*, 62 F.3d at 1519.

In examining the '562 patent, its prosecution history and the prior art, the trial court did not find a reasonable likelihood of infringement under the doctrine of equivalents. From the context of the patent, the court described the '562 patented invention as follows:

> [I]t allows the ease of loading a rod into the implant from a posterior direction, and then permits the user to fix that rod in place using only one locking element. Because the MOSS–MIAMI device requires the use of more than one element to lock the rod, it cannot be seen as stealing the benefit of the '562 patent.

*Sofamor Danek Group,* 1994 WL 846541, at *9.

■ The trial court used the three-pronged function-way-result test (FWR) in *Graver Tank* for its doctrine of equivalents analysis. This court has recently clarified *en banc* the proper application and context for this test. *Hilton Davis,* 62 F.3d at 1512. *Hilton Davis* says it goes too far to describe that the function-way-result test as "the test" for equivalents. *Hilton Davis,* 62 F.3d at 1518–19. Evidence beyond function, way, and result informs application of the doctrine, which focuses on the substantiality of changes from the claims in the accused device. *Id.* One of ordinary skill in the relevant art provides the perspective for assessing the substantiality of differences between the claims and the accused device. *Id.* "The test is objective with proof of the substantiality of the differences resting on objective evidence." *Id.* This court commends, for instance, evidence that persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was. *Id.* (citing *Graver Tank,* 339 U.S. at 609, 70 S.Ct. at 856–57). If the parties, however, presented primarily evidence of FWR, this presentation may suffice to satisfy the doctrine of equivalents. *Id.*

■ Sofamor did not show a reasonable likelihood that the MOSS–MIAMI device infringed under the FWR test. As the trial court noted: "However, because the MOSS–MIAMI uses significantly different means to perform the body-attaching function, it cannot be found to perform in 'substantially the same way.'" *Sofamor Danek Group,* 1994 WL 846541, at *10. In particular, the trial court focused the MOSS–MIAMI's use of more than one element to lock the rod in place. Similarly the trial court determined that Sofamor did not show a reasonable likelihood that the MOSS–MIAMI device includes the claimed threaded plug element.

■ In addition, prosecution history and prior art may limit Sofamor's assertion of a reasonable likelihood that differences between the '562 patented invention and the MOSS–MIAMI device are insubstantial. Prosecution history estoppel prevents a patentee from recapturing under the doctrine of equivalents claim scope surrendered during prosecution. *Exhibit Supply Co. v. Ace Patents Corp.,* 315 U.S. 126, 136, 62 S.Ct. 513, 518–19, 86 L.Ed. 736 (1942). Similarly a patentee may not assert a range of equivalents that captures art already in the public domain. *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.,* 904 F.2d 677, 683, 14 USPQ2d 1942, 1947 (Fed.Cir.), *cert. denied* 498 U.S. 992, 111 S.Ct. 537, 112 L.Ed.2d 547 (1990). For instance, the trial court properly noted that the '562 patent strove to distinguish itself from prior art with a "separate locking screw [or external nut]." U.S. Patent No. 5,005,062, col. 3, 11. 64–67. The MOSS–MIAMI device, including its external nut may fall within the scope of prior art. Thus, these limitations on the doctrine of equivalents also may support the district court's ruling that Sofamor did not show a reasonable likelihood of infringement.

## IRREPARABLE HARM

■ The trial court also found that Sofamor did not show irreparable harm. *See Reebok Int'l,* 32 F.3d at 1555. Sofamor instead relied on a presumption of irreparable harm often invoked upon a clear showing of likelihood of success on patent infringement and validity. *See H.H. Robertson,* 820 F.2d

at *390. Because Sofamor did not show a clear case of likelihood of success on the merits,* however, its failure to proffer evidence of irreparable harm buttresses the trial court's denial of Sofamor's motion.

Because Sofamor showed neither a likelihood of success on the merits nor irreparable harm, the trial court properly denied the motion for preliminary injunction. Any undue restraints on the interpretation of the '562 claims were harmless misconstruances. The trial court did not abuse its discretion. Therefore, this court affirms.

COSTS

Each party shall bear its own costs.

*AFFIRMED.*