PROGRESSIVE GAMES, INC., Plaintiff,

v.

BALLY'S OLYMPIA, L.P.,
et al., Defendants.

Civil Action No. 3:96–cv–607WS.

United States District Court,
S.D. Mississippi,
Jackson Division.

April 11, 1997.

Kenneth A. Rutherford, Alston, Rutherford & Van Slyke, Jackson, MS, Robert E. Purcell, Jerry T. Kearns, Kurt S. Lewis, David James Lee, Reilly, Purcell & Lewis, Denver, CO, for Progressive Games, Inc.

Joseph L. McNamara, McNamara, Bailey & Kelly, Jackson, MS, for Biloxi Casino Corp.

Ross F. Bass, Jr., Phelps Dunbar, Jackson, MS, Cary B. Johnson, Timothy M. Kenny, J. Randall Benham, Oppenheimer Wolff & Donnelly, Minneapolis, MN, Edward F. O'Connor, Oppenheimer Poms Smith, Irvine, CA, for Grand Casinos, Inc., Grand Casinos of Mississippi, Inc.–Gulfport, Gulfside Casino, Inc., Hollywood Park, Inc., Lady Luck Biloxi, Inc., Mississippi–I Gaming, L.P., Patrician, Inc., President Riverboat Casino–Mississippi, Inc., Riverboat Corp. of Mississippi.

Robert A. Byrd, Byrd & Wiser, Biloxi, MS, for Treasure Bay Corp.

Ross F. Bass, Jr., James W. Craig, Phelps Dunbar, Jackson, MS, J. Randall Benham, Oppenheimer Wolff & Donnelly, Minneapolis, MN, Edward F. O'Connor, Oppenheimer Poms Smith, Irvine, CA, for Shuffle Master.

Ross F. Bass, Jr., James W. Craig, Phelps Dunbar, Jackson, MS, Cary B. Johnson, Timothy M. Kenny, Oppenheimer Wolff & Donnelly, Minneapolis, MN, for Bally's Olympia, L.P.

### ORDER DENYING INJUNCTIVE RELIEF

WINGATE, District Judge.

Before this court is the motion of the plaintiff Progressive Games, Inc., (hereinafter "Progressive") asking for preliminary injunctive relief [1] against the defendants: Progressive is a provider to Mississippi's casinos of a gambling device called "Caribbean

---

1. The plaintiff's motion is brought pursuant to Title 35 U.S.C. § 283 which provides that "[t]he several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."

Stud," a game which follows to greater or lesser extent the traditional pattern of "stud poker," defined by Webster's Dictionary as "a variety of the game of poker in which each player is dealt five cards, the first face down and the others face up, the betting being done on each round of open cards dealt." By its motion, Progressive seeks an order from this court enjoining the defendants from operating in Mississippi casinos the "tournament" feature of defendants' gambling device, the "Let It Ride The Tournament" game. According to plaintiff, the defendants' gambling game, which also consists of a form of stud poker, infringes claims 8, 14 and 15 of Progressive's United States Patent No. 5–544893 (also referred to as the "893" patent and/or "Caribbean Stud"). ·

The defendants are several Mississippi casinos together with Shuffle Master, Inc., the assignee and distributor of a game called the "Let It Ride the Tournament" game (hereinafter "Let It Ride game") which Progressive accuses of infringement. Defendants contend that the Let It Ride game does not include a "progressive jackpot" and lacks other features of the Progressive invention, thereby precluding the charge of infringement.

This court has jurisdiction over this matter based on Title 28 U.S.C. § 1331[2] (federal question). Additionally, the power to award damages and other relief for patent infringement rests with the United States District Courts, which have original and exclusive jurisdiction over patent infringement cases. *See* Title 28 U.S.C. § 1338(a).[3] Having considered the briefs and arguments of counsel, this court is persuaded to deny preliminary injunctive relief.

## PERTINENT FACTS

### A. *The Plaintiff's Invention Described by the "893" Patent*

Each application for a patent consists of a specification, one or more drawings, an oath or declaration, and the required filing fees. The specification consists of, among other things, the title, an abstract, a brief summary of the invention, a detailed description of the preferred embodiments of the invention, and the "claims" that particularly and distinctly define the subject matter that the inventor regards as his or her invention. The claims set the metes and bounds of the patent owner's exclusive rights. *See* H. Schwartz, *Patent Law and Practice*, pp. 9–12, (2d. ed.1995).

Claims 1 and 9 of the "893" patent describe Progressive's invention as an "apparatus for including a jackpot component as an additional feature in a live casino table card game...." Claim 8 of the "893" patent describes Progressive's invention as "the apparatus of claim 1, wherein said live casino table card game consists essentially of stud poker." Claim 14 refers to "[t]he apparatus of claim 9, wherein said live casino table card game consists essentially of stud poker." Claim 15 describes Progressive's "893" apparatus in pertinent part as "[a]n apparatus for including a jackpot component as an additional feature in a live casino table card stud poker game." The "Abstract" of Progressive's "893" patent describes an "apparatus for progressive jackpot gaming" and states in pertinent part that "[i]n addition to playing a live casino table game, each player makes an additional wager at the beginning of each hand that makes the player eligible to win all or part of a jackpot. If during the play of the hand the player is dealt a predetermined arrangement of cards, the player wins a preselected percentage of the jackpot amount. The jackpot is progressive in that unwon amounts of the jackpot carry over into the next hand. Apparatus is provided to receive each gaming token wagered for the jackpot component, to increment the jackpot meter which displays the jackpot amount, to decrement the jackpot meter whenever a winning hand is paid and to reset the apparatus for

---

**2.** Title 28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil cases arising under the Constitution, laws, or treaties of the United States."

**3.** Title 28 U.S.C. § 1338(a) provides in pertinent part that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection, and copyright cases."

the next hand." In other words, the "893" patent abstract describes a table card game which permits a player to place a side bet in addition to any other wager in order to be eligible for a "progressive jackpot." The jackpot is referred to as "progressive" because it continues to grow until a player is dealt a predesignated hand of cards and wins part or all of it.

According to the "893" patent's "Detailed Description of the Preferred Embodiments" (hereinafter "detailed description") of the apparatus for progressive jackpot gaming, the player who is dealt a royal flush in a Caribbean Stud game would win 100% of the jackpot amount. A player who is dealt a straight flush would win 10% of the total jackpot amount, while four of a kind would win 1% of the jackpot amount. Additionally, any player dealt a full house would win 50 tokens, while the player dealt a flush would win 25 tokens.

The detailed description of the "893" patent apparatus for progressive jackpot gaming consists of a table either in the shape of a semi-circle with seven player positions (figure 1), or in the shape of an oval with eight player positions (figure 2). In addition to the player positions marked on the table surface, the detailed description describes a "coin-acceptor" at each player position into which a player may insert[4] a token or coin as an additional wager in order to be eligible to win the jackpot. As shown in both figures one and two of the specification, the coin-acceptor has an electronic sensor which recognizes that a player has made a side bet. The sensor is connected to a main control board or meter which keeps track of all the side bets,[5] displaying the amount of the jackpot as it increases and diminishes. There is a row

of jackpot reset control buttons operated by the dealer which permits resetting the amount of the jackpot after a player wins all or part of it.[6]

The detailed description also states that "[w]hen each player has had a reasonable opportunity to make a progressive jackpot wager, the dealer activates (the) lockout switch which deactivates each coin acceptor. Any tokens placed in a coin acceptor after (the) lockout switch is activated will not register. This prevents late wagering after the cards are dealt." As readily may be ascertained, the player is required, after a period of deliberation, to make the decision to participate in the jackpot component of the progressive jackpot game before being dealt any cards. Otherwise, without the "lockout switch," a player could be dealt a winning hand and then, being assured of winning, decide to place a belated side bet to participate in the progressive jackpot.

In support of its argument for injunctive relief, Progressive claims that the defendants' Let It Ride game is similar to Progressive's jackpot gaming apparatus in several respects.[7] However, there is only one aspect of the Let It Ride game which Progressive seeks to enjoin, that component of the defendant Shuffle Master's 5–417430 patent (hereinafter the "430 patent") which permits "progressive jackpot wagering." This is the same feature which the defendants refer to as the "tournament" feature of the Let It Ride game.[8] Progressive notes that the Let It Ride game is described as a version of "stud poker" which permits one-dollar side bets in addition to any other wager. This one-dollar side bet makes the player eligible

---

**4.** According to the Brief Summary of the Invention contained in the "893" patent at column 2, the player "drops a coin into the coin acceptor."

**5.** The "893" jackpot is funded by the side bets.

**6.** The digital display controlled by the jackpot reset buttons consists of five spaces for the numbers zero to nine. Therefore, the jackpot can be displayed on the meter in any amount up to $99,999.00.

**7.** Progressive does not allege that the basic Let It Ride game infringes the "893" patent held by Progressive. Both games consist of, among other things, a gaming table for playing card games

with seven player positions. The "893" patent is configured for playing a variation of stud poker, as is the Let It Ride game.

**8.** According to the "Summary of the Invention" contained in Shuffle Master's "430" patent, this feature provides "[a] progressive jackpot wagering method and game." While this language standing alone may suggest that the Let It Ride game offers the same jackpot feature as the "893" patent, the detailed descriptions of the Let It Ride game and Progressive's game reveal significant differences between them.

for a fixed cash bonus and a "tournament" game which offers a large pay-off or jackpot for the winner of the tournament. Progressive contends that it is this "tournament" feature of the Let It Ride game which infringes upon the "893" patent, also known as the Caribbean Stud game. Furthermore, Progressive argues that even if the tournament feature of the Let It Ride game does not literally infringe upon the "893" patent, it is still sufficiently similar to the Caribbean Stud game to enable this court to find infringement under the "doctrine of equivalents." Thus, says Progressive, injunctive relief should be granted.

Finally, Progressive contends that the popularity of the Let It Ride game in Mississippi's casinos has caused casino proprietors to displace the Progressive apparatus from the more desirable floor locations, thereby diminishing exposure to the areas of high customer traffic and further cutting into Progressive's profits.

### B. *The Let It Ride "Tournament Feature"—Not Progressive*

The "tournament" feature of the Let It Ride game is described in the "Summary of the Invention" contained in Shuffle Master's "430" patent specification as follows: "[t]he progressive jackpot game and method involves placing a wager to participate in the jackpot game, playing a first wagering game to select a group of qualified players or finalists and playing a second wagering game to select a winner of the jackpot from a group of finalists." It is this feature which, according to Progressive, infringes its "893" patent. In response, the defendants note that the specification of the plaintiff's "893" patent describes a "jackpot component" which is "progressive" in nature and pays immediately. In contrast, defendants note that the Let It Ride game pays the winning player a fixed bonus. According to the detailed description [9] of the Let It Ride game, if a player who places no side bet is dealt a "flush," then the player is paid an amount equal to 8 times the amount of the player's bet. If that same player also had placed a side bet using the side bet feature of the Let It Ride game (usually of some predetermined fixed amount such as $1.00), then the pay-off amount would have been an additional $30.00. The other winning hands eligible for a side bet pay-off are the "full house" ($125.00), "four-of-a-kind" ($400.00), the "straight flush" ($2,500.00), and the "royal flush" ($20,000.00).

Additionally, according to the detailed description of the Let It Ride game, any player dealt a royal flush becomes eligible to participate in a "super jackpot" tournament which could amount to one million dollars ($1,000,000.00) or more. Defendants note that those persons dealt a "straight" or better also may qualify for tournament play if they make the requisite side bet.[10] These tournaments are conducted every 120 days. The defendant Shuffle Master and the participating casinos announce the various tournament dates, the locations, and the prize amounts. The tournament playoffs consist of three elimination rounds and one final round played over a two-day period. At the beginning of each round, each player is given an equal amount of non-redeemable chips. The one hundred (100) players with the greatest earnings advance to the second round; the top twenty-five (25) to the third round; and the top seven (7) to the final round.

So, say defendants, the Let It Ride game is not "progressive" because the prize amounts are ultimately fixed and not continually incremented and decremented as games are played and players win all or part of the jackpot. Instead, according to the detailed description of the Let It Ride game, the jackpot amount simply accumulates until the tournament is played and the proceeds are won by the participants; the jackpot amount is not funded exclusively by side bets; and, if no royal flush is dealt during the prize accumulation period between tournaments, then

---

9. The Detailed Description of the Preferred Embodiment pertaining to the Let It Ride game.

10. Other winning hands, according to the defendants, are: the flush (five cards of the same suit); the full house (two matching cards of one denomination and three matching cards of another); the straight flush (five cards of the same suit in numerical sequence); and the royal flush (the highest poker hand consisting of a ten, a jack, a queen, a king, and an ace, all of the same suit).

the next highest hand is used to determine who the tournament participants will be. The accumulated amount does not carry over into the next 120–day prize accumulation period.

### C. The Demonstration—No Coin Acceptor or Lockout

Defendants also argue that the Let It Ride game lacks two other features of the Progressive apparatus—the "coin acceptor" and a "lockout switch." During the progress of the injunction hearing, this court observed a demonstration of a fully operational Let It Ride game. The device on the Let It Ride game which Progressive refers to as its "coin acceptor" is a red disk with a sensor light beneath the disk's plastic cover which registers the presence of a token or chip by lighting-up when the token or coin is placed on its surface. The token or chip is placed on the disk, not inserted or "dropped into" an acceptor. After the dealer has called for side bets and prepares to deal, the dealer, operating a computer keyboard, will "lockout" the sensor disks and they will momentarily no longer record a side bet. A player who has not placed a token or chip on the disk up to this point may attempt to do so, but the sensor light will not activate. However, as was pointed out to the court by the defendants, this lockout function is not a "true lockout" because it does not prevent a player from making a side bet once the lockout key is activated. Once the dealer is informed by the player that the player wishes to place a belated bet in hope of winning a cash bonus and a place in the tournament, the dealer can reactivate the red disk and the bet can be made. The game then resumes. Once the cards are dealt, say defendants, the players' side bets are "locked-in" and cannot be withdrawn.

Thus, say defendants, the Let It Ride game does not pay a winning hand a progressive jackpot and no feature of the Let It Ride game records or tracks the amount of a progressive jackpot. Moreover, say defendants, the Let It ride game does not prevent late wagering with a "lock-out" device in the same manner as Progressive's "893" patent, and, as the defendants point out, the Let It Ride game does not have a "coin acceptor" into which a coin or token may be dropped or inserted as is described in the "893" patent. If the Let It Ride game does not have any one of these characteristics—a progressive jackpot or a conclusive "lock-out" device to prevent late wagering, or a coin acceptor—then, say defendants, no infringement of Progressive's United States Patent No. 5–544893, particularly with regard to claims 8 and 14 as they relate to claim 15, has been shown up to this point and there is no basis for granting preliminary injunctive relief.

### ANALYSIS

It is the law of the Federal Circuit, rather than the Fifth Circuit (or regional Circuit) law, which provides the standard for issuance of an equitable injunction to prevent violation of patent rights. See Bio–Technology General Corporation v. Genentech, Inc., 80 F.3d 1553, 1558 (Fed.Cir.1996), citing We Care, Inc. v. Ultra–Mark Int'l Corp., 930 F.2d 1567, 1570 (Fed.Cir.1991); and Hybritech Inc. v. Abbott Laboratories, 849 F.2d 1446, 1451 (Fed.Cir.1988). The statutory authority for granting injunctions in patent cases is set forth at Title 35 U.S.C. § 283 (see footnote 1). As the moving party, Progressive must establish its right to a preliminary injunction by showing four factors: (1) a reasonable likelihood of success on the merits; (2) irreparable harm if the injunction is not granted; (3) the balance of the hardships tipping in its favor; and (4) a tolerable effect on the public interest. Sofamor Danek Group, Inc. v. DePuy–Motech, Inc., 74 F.3d 1216, 1219 (Fed.Cir.1996); Nutrition 21 v. United States, 930 F.2d 867, 869 (Fed.Cir. 1991). The court must balance these factors against one another and against the extent of the relief sought. Hybritech, Inc. v. Abbott Laboratories, 849 F.2d at 1451. The movant, of course, bears the burden of proving entitlement to relief. Reebok International Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1555 (Fed.Cir. 1994). "The grant or denial of a preliminary injunction pursuant to Title 35 U.S.C. § 283 is within the discretion of the district court." Novo Nordisk of North America, Inc. v. Genentech, Inc., 77 F.3d 1364, 1367 (Fed.Cir. 1996). Accordingly, a trial court's decision denying a preliminary injunction will be over-

turned on appeal only upon a showing that the court "abused its discretion, committed an error of law, or seriously misjudged the evidence." *Smith International, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1579 (Fed. Cir.), *cert. denied*, 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983).

■ Determining infringement involves a two-step process where, firstly, the claim language is interpreted as a matter of law, and secondly, the accused device is compared to the interpreted claim to determine infringement as a question of fact. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976–79 (Fed.Cir.1995); and *Read v. Portec*, 970 F.2d 816, 821–22 (Fed.Cir.1992). There is literal infringement where the accused device contains all of the limitations specified in a patent claim. *Portec*, 970 F.2d at 821. However, "[w]hen literal infringement is not established, infringement may be proved under the 'doctrine of equivalents' when there is not a substantial difference between the claimed invention and the accused product." *Pall Corporation v. Micron Separations, Inc.*, 66 F.3d 1211, 1218 (Fed.Cir.1995). Under the doctrine of equivalents, infringement may be found where an accused product "performs substantially the same overall function or work, in substantially the same way, to obtain substantially the same overall result as the claimed invention." *Wilson Sporting Goods Company v. David Geoffrey & Associates*, 904 F.2d 677, 683 (Fed.Cir. 1990), *cert. denied*, 498 U.S. 992, 111 S.Ct. 537, 112 L.Ed.2d 547 (1990).

### 1. *Substantial Likelihood of Success on the Merits*

■ In order to establish a reasonable likelihood of success on the merits in a patent infringement case, the movant for injunctive relief must show the "validity" of the patent in question and "infringement" of that patent by the accused apparatus or product. *Hybritech*, 849 F.2d at 1451. In the instant case, the validity of Progressive's "893" patent is not challenged. Thus, Progressive must show the court that it has a substantial

likelihood of proving at trial its patent infringement claim. *H.H. Robertson Company v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed.Cir.1987). To infringe, an accused device must embody each claim limitation, or its equivalent. *Sofamor Danek Group, Inc. v. DePuy–Motech, Inc.*, 74 F.3d at 1220.

■ This court has compared the specification language of Progressive's "893" patent with the specification language of the Let It Ride patent and has found what appears to be significant differences in the prize winning features of each game. The major apparent difference between the two games appears to be the Let It Ride game's lack of a "progressive jackpot" as that type prize is defined in the specification of the "893" patent. Thus, this court simply is not persuaded at this juncture that Progressive has shown that all limitations set forth in claims 8, 14 and 15 of Progressive's United States Patent 893 are found in defendants' Let It Ride game. Further, at this point, this court is not persuaded that Progressive has shown that defendants' Let It Ride game performs substantially the same overall function or work, in substantially the same way, to obtain substantially the same overall result as Progressive's "893" apparatus. The tournament feature offers fixed prizes and the opportunity to participate in other games featuring even greater prizes. From the evidence presented, this court is unable to conclude that the Let It Ride game is offering the same "progressive jackpot" feature as the "893" patent or that the tournament feature is substantially the same as the "progressive jackpot" feature of the "893" patent.[11] Therefore, this court has no foundation for assuming a substantial likelihood of success on the merits in the instant case.

### 2. *Irreparable Harm*

■ As earlier stated, the movant is required to establish that it will suffer irreparable harm if the preliminary injunction is not granted. *Hybritech*, 849 F.2d at 1451. Irreparable harm may be presumed where there is a strong showing of the likelihood of

---

**11.** Since this court is persuaded that Progressive has not met its burden relative to the "progressive jackpot," this court sees no need to address

defendants' arguments concerning the coin acceptor and lockout switch.

success on the merits. *Eli Lilly and Company v. American Cyanamid Company*, 82 F.3d 1568, 1571 (Fed.Cir.1996). Because Progressive has not made a strong showing on the issue of infringement, it is not entitled to a presumption of irreparable harm. *See High Tech Medical Instrumentation v. New Image Industries, Inc.*, 49 F.3d 1551, 1556 (Fed.Cir.1995). Additionally, under the specific circumstances of this case and the testimony presented at the injunctive relief hearing, this court finds that an award of money damages would be an adequate remedy in the event that Progressive ultimately establishes infringement. *See Eli Lilly*, 82 F.3d at 1578 (a patent infringement case affirming district court's finding that money damages would be an adequate remedy if infringement essentially was shown).

This court finds persuasive the testimony of Mr. William Parrish, a plaintiff witness, who stated that the plaintiff was suffering economically due to the introduction of the defendants' Let it Ride game into the Mississippi market, and that he could calculate the resulting loss suffered by the plaintiff. According to Parrish, the use of a formula would make the calculation of Progressive's damages a simple task. Parrish estimated that the plaintiff already had lost in the neighborhood of from $120,000.00 to $160,-000.00 and that the continuing losses also could be ascertained by use of the formula. So, from Parrish's testimony, it is apparent that the plaintiff's damages are economic, calculable, and compensable by money damages. Thus, the plaintiff fails to make the requisite showing of irreparable harm.

### 3. *The Other Factors*

██ The district court may deny a preliminary injunction based on the movant's failure to establish either of these two crucial factors without making additional findings respecting the other factors. *See Reebok International, Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed.Cir.1994); and *T.J. Smith and Nephew Ltd. v. Consolidated Medical Equipment, Inc.*, 821 F.2d 646 (Fed.Cir.1987) (affirming denial of preliminary injunction based on movant's failure to establish a reasonable likelihood of success and irreparable harm, even though district court did not address the other two factors). Moreover, in *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 953 (Fed.Cir. 1990), the Court stated that the absence of an adequate showing with regard to any one of the four factors may be sufficient to justify the denial of a preliminary injunction, depending upon the weight discretionarily assigned the other factors by the trial court.

### CONCLUSION

Therefore, this court finds the motion of the plaintiff Progressive Games, Inc., for a preliminary injunction not well taken and the same is hereby denied. Of course, this court's opinion represents merely truncated findings based upon incomplete submissions of proof by the parties and shall not be construed to indicate the court's position with regard to the final disposition of this matter. Even if this court had granted a preliminary injunction, the court's findings of fact and conclusions of law would not be binding at trial on the merits. *See University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981).

