ICON HEALTH & FITNESS,
INC., Plaintiff,

v.

SPORTCRAFT, LTD., Defendant.

No. CIV.A.01–5379 AMW.

United States District Court,
D. New Jersey.

July 18, 2003.

Robert J. Schoenberg, Riker, Danzig, Scherer, Hyland & Perretti LLP, Morristown, NJ, for Sportcraft, Ltd.

James P. Flynn, Epstein Becker & Green, P.C., Newark, NJ, for Icon Health & Fitness, Inc.

## OPINION

WOLIN, District Judge.

The litigants before the Court are both manufacturers of exercise equipment. At issue is whether the inclination assembly of a home-use treadmill infringes a patent held by plaintiff, Icon Health & Fitness, Inc. ("Icon"). Icon initiated this action alleging that the incline mechanism of the TX350 Treadmill ("TX350"), manufactured by defendant, Sportcraft, Ltd. ("Sportcraft") infringes on United States Patent No. 5,672,140 (the " '140 patent").

In its application for summary judgment, Sportcraft asserts that the incline adjusters on the TX350 are structures that are neither identical nor equivalent to the "inclination means" limitation of the '140 patent. Icon alternatively seeks summary judgment stating that the TX350 both literally infringes Claim 26 of the '140 patent and infringes based on the doctrine of equivalents. This motion has been decided upon the written submissions of the parties pursuant to the Federal Rules of Civil Procedure 78. For the reasons stated herein, the Court will grant Sportcraft's motion for summary judgment. In doing so, the Court also denies Icon's motion for summary judgment.

## BACKGROUND

Icon, a company with its principal place of business in Logan, Utah, is a leading manufacturer of home exercise and sporting equipment. Icon is the owner by assignment of the '140 patent. Icon's '140 patent is directed to a reorienting treadmill, that is, a treadmill that can be selectively moved between a first, or operational position, and a second, or folded position. More importantly, the '140 patent discloses treadmills that incline and decline through various structures and using various methods.

Sportcraft, a Delaware corporation with its principal place of business in Mt. Olive, New Jersey, provides products for indoor and outdoor games. In August 2001, Sportcraft entered the treadmill market with the TX350 brand treadmill. The TX350 is a reorienting treadmill with an inclination mechanism located near the rear of the tread base. To adjust the incline of the tread base on which the user runs, the user must manually rotate each of the two triangular-shaped feet. Icon claims that the inclination mechanism of the TX350 infringes Claim 26, ¶ 3 of the '140 patent.

On November 19, 2001, Icon filed a complaint alleging that the TX350 infringes the '140 patent. Icon thereafter filed a motion for a preliminary injunction which the Court denied in a Memorandum Opinion entered on March 13, 2002. (See Memorandum Opinion and Order ("Memorandum Opinion")). In the Memorandum Opinion, this Court acknowledged that the parties dispute only Claim 26, ¶ 3 of the '140 patent which describes the adjustable incline mechanism. In the current proceeding, the same is true. Icon alleges that the incline adjusters of the TX350 infringe the '140 patent because they are either identical or equivalent to an inclination embodiment of Claim 26, ¶ 3.

## DISCUSSION

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); see Hersh v. Allen Prods. Co., 789 F.2d 230, 232 (3d Cir.1986). A dispute involving a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Supreme Court also observed that "[o]nly disputes over facts that might affect the outcome of the suit under governing law will properly preclude an entry of summary judgment." Id.; see also Ness v. Marshall, 660 F.2d 517, 519 (3d Cir.1981) (holding that the role of district court is to determine whether genuine issue of material fact exists).

Furthermore, when considering a summary judgment motion, a Court must view all evidence submitted in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983). Although the summary judgment hurdle is a difficult one to meet, it is by no means insurmountable. Accordingly, the Supreme Court concluded that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The fact that the lawsuit involves a non-infringement analysis does not render this case unsuitable for summary judgment. Summary judgment is "as appropriate in a patent case as any other" case under Rule 56(c). *Avia Group Int'l, Inc. v. L.A. Gear Cal.*, Inc., 853 F.2d 1557, 1561 (Fed.Cir. 1988); *Ciba–Geigy Corp. v. Alza Corp.*, 864 F.Supp. 429, 432–33 (D.N.J.1994). The Federal Court has advised, "[w]here no issue of material fact is present ... courts should not hesitate to avoid an unnecessary trial by proceeding under Fed. R.Civ.P. 56 without regard to the particular type of suit involved." *Chore–Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774, 778–79 (Fed.Cir.1983).

It is with these tenets in mind that the Court considers defendant's motion and plaintiff's cross-motion for summary judgment.

## B. Patent Infringement

■ A trial court is not obliged "to interpret claim[s] conclusively and finally during a preliminary injunction proceeding." *Sofamor Danek Group v. DePuy–*

*Motech,* 74 F.3d 1216, 1221 (Fed.Cir.1996). Therefore, although the Court had an opportunity to construe Claim 26 of the '140 patent in its Memorandum Opinion, that construction need not be the final interpretation.

■ An infringement analysis requires two separate steps. First, a court must construe the claims asserted to be infringed as a matter of law in order to establish their meaning and scope. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir.1995). Second, the claims as construed are then compared to the allegedly infringing device. *See id.* In this latter step, patent infringement may be found in either of two ways: literal infringement or infringement under the doctrine of equivalents.

■ Since *Markman,* the interpretation of patent claim terms falls within the exclusive province of the court. *See id.* at 967; *see also Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1366 (Fed.Cir. 2000). The standard to be applied for claim construction is what one of ordinary skill in the art at the time of the invention would have understood the term to mean. *Markman,* 52 F.3d at 986. To ascertain the meaning of a patent claim, "the court should first look to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996); *see also Markman,* 52 F.3d at 979–81.

The claims of the patent establish the limits and boundaries of the patent while the specification, of which the claims are a part, contains a written description of the invention that would enable one of ordinary skill in the art to make and use the invention. *Markman,* 52 F.3d at 979–80. "For claim construction purposes, the description may act as a sort of dictionary,

which explains the invention and may define terms used in the claims." *Id.* (*quoting In re Vogel*, 57 C.C.P.A. 920, 422 F.2d 438, 441 (Cust. & Pat.App.1970)); *Vitronics*, 90 F.3d at 1582. The written description, however, "does not delimit the right to exclude. That is the function and purpose of claims." *Id.*

Upon consideration of the above, the Court must determine, as a matter of law, the meaning of the claim language at issue.

### 1. *Claim Construction*

The parties agree that the only claim in dispute is Claim 26, ¶ 3 of the '140 patent. That limitation describes an

> inclination means connected to said frame and having rear feet means movably attached to said frame proximate said rear of said frame for positioning and supporting said frame on a support surface in said rear position, said inclination means being operable to move said rear feet means relative to said frame to vary the inclination of said tread base relative to a support surface.

('140 patent, col. 22, l. 19–25).

In the Memorandum Opinion, this Court found that Claim 26, ¶ 3 describes a means-plus-function element because it uses the term "means" without specifying sufficient structure for performing the recited function. The parties do not dispute the Court's finding. Therefore, as a means-plus-function element, Claim 26, ¶ 3 must be interpreted under 35 U.S.C. § 112, ¶ 6, which provides that:

> [a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material or acts in support thereof, and such claim shall be construed to cover the corresponding

structure, material or acts described in the specification and equivalents thereof. 35 U.S.C. § 112, ¶ 6.

■ This statutory language limits the interpretation of the means-plus-function element so that the element does not cover every means for performing the identified function. Claim construction of a means-plus-function element requires identification of the function recited in the claim and identification of the structure corresponding to that function as disclosed in the specification. *See Asyst Techs., Inc. v. Empak, Inc.*, 268 F.3d 1364, 1369 (Fed.Cir. 2001); *Budde v. Harley–Davidson, Inc.*, 250 F.3d 1369, 1376 (Fed.Cir.2001).

### 2. *The Function of Claim 26, ¶ 3*

The Court defines the function of Claim 26, ¶ 3 as "the treadmill's user may move the feet of the treadmill in order to increase or decrease the inclination of the tread base." (Memorandum Opinion at 12). Furthermore, the parties both agree with the Court's finding that the TX350 performs the same function as that identified in Claim 26.(Id.). Icon, however, argues that the Court's determination of function connotes that an "external source of force [ ] moves the rear feet (i.e., 'the treadmill user')," rather than a "*structure* associated with the inclination means that acts on the rear feet." (Plaintiff's Reply Memorandum of Law ("Pl.Brief") at 6) (emphasis in original).

Plaintiff has misinterpreted the Court's findings. The Court defined the function broadly to include, in one extreme, an inclination mechanism in which a treadmill user must manually adjust the feet to operate inclination. In the other extreme, the function also encompasses an inclination mechanism that is activated by a more complex series of structures, for example feet of a tread base that are lifted or lowered by the push of a button. Addi-

tionally, plaintiff is surely aware that the function encapsulates all five of the embodiments of the '140 patent, which includes three embodiments with motorized elements. The Court did not construe the function to embrace only some of the means delineated in Claim 26, ¶ 3.

With those issues in mind, the Court finds that the manual incline adjusters of the TX350, as well as the more complex inclination assemblies of Claim 26, ¶ 3 perform the same function.

### 3. *Corresponding Structure*

■■■ By writing a claim in a means-plus-function form, "a party is limited to the corresponding structure disclosed in the specification and its equivalents." *Kahn v. General Motors Corp.*, 135 F.3d 1472, 1476 (Fed.Cir.1998) (citations omitted). "A structure disclosed in the specification is only deemed to be 'corresponding structure' if the specification clearly links or associates that structure to the function recited in the claim." *Id.* (*citing B. Braun Med., Inc. v. Abbott Lab.*, 124 F.3d 1419, 1424 (Fed.Cir.1997)).

The '140 patent discloses five separate embodiments that perform the inclination means function. The first three embodiments of each involve a mechanical operation for varying the inclination of the tread base, therefore, they are undisputably not infringed by the TX350. Only the fourth and the fifth embodiments contain non-motorized inclination mechanisms.

The fourth embodiment requires the user to adjust the treadmill's legs by inserting pins into apertures in the leg. The user must slide the legs in and out of the casings and adjust the pins. Plaintiff has not challenged defendant's position that the TX350 does not either literally infringe the fourth embodiment of Claim 26 nor is closely-related under the doctrine of equivalents.

Thus, the Court looks only to the fifth embodiment in its determination of whether the TX350 infringes the '140 patent. The fifth embodiment describes an inclination assembly that consists of a rectangular planar member [vertically] secured to the tread base. Attached to the rectangular planar member, is a planar support with one end "shaped to be an elongated finger-like extension which functions as a stop for the pawl." The planar support "is rotatably connected to the planar member [ ] by means of a pivot axle ... and has a ratchet section having [three distinct notches] along its perimeter...." Additionally, the "pawl [which is a locking means which engages the notches] is also a planar member having a somewhat rectangular configuration." Secured to the pawl and the rectangular planar member is a "V-shaped spring" which "is constructed to exert a force [and] therefore urges the pawl ... to rotate clockwise into abutment against the support [ ] proximate the notches." ('140 patent col. 16 l. 39 to col. 17 l. 61).

Icon contends that the Court should not consider any structure that does not perform the actual lifting or lowering (specifically, the "V-shaped spring"), although the structure may be integral to effectuate inclination. Icon argues that the Court should be limited to the following structures of the inclination assembly: (1) rectangular member secured to the tread base; (2) a support foot with (3) an elongated end including (4) a series of notches; (5) a pawl used as a locking means which engages the notches; and (6) a pivot axis about which the support foot can rotate.

Icon reasons that the Court should only consider those structures that moves the rear feet to vary the incline and not consider the "V-shaped spring" which is a "structure that produc[es] the force that acts to move the feet means relative to the

support surface." (Pl. Brief at 13). As such, Icon argues that the "V-shaped spring" should not be included in the determination of the corresponding structure because the spring is not integral for the rear feet "to be operable" to move and vary inclination of the tread base. (Id.).

By not including the spring and by limiting the corresponding structures to the six listed above, Icon argues that a user can manually adjust the assembly to achieve inclination. The Court disagrees with plaintiff's attempts to limit the structures of its inclination assembly to postulate that manual adjustment is possible. The language of the '140 patent clearly requires a force element or "V-shaped spring" component to act in conjunction with the six elements listed above to achieve inclination.

■ As stated above, the Court's determination of the function should be read broadly. Accordingly, in determining corresponding structures the Court includes all elements of the disputed patent claim, including structures that produce the force that act to operate the feet.

The Court must now decide whether the inclination assembly of the TX350 is either identical or equivalent to the inclination assembly of the fifth embodiment. In its determination, the Court need not go beyond the intrinsic evidence because the language '140 patent is not ambiguous. Extrinsic evidence may only be considered when the intrinsic evidence is ambiguous in its description of the patented invention. *Vitronics Corp.,* 90 F.3d at 1582. Because one of ordinary skill in the art would understand the meaning of the patent claims by looking to the patent itself the Court need not refer to extrinsic evidence.

### 4. *Literal Infringement*

■ To establish literal infringement, a plaintiff must demonstrate that the accused device "incorporates the structure disclosed in the specification, or its substantial structural equivalent ..." *Intellicall, Inc. v. Phonometrics, Inc.,* 952 F.2d 1384, 1388–89 (Fed.Cir.1992). "To determine whether a claim limitation is met literally, where expressed as a means for performing a stated function, the court must compare the accused structure *with the disclosed structure,* and must find equivalent *structure* as well as *identity* of claimed *function* for that structure." *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.,* 145 F.3d 1303, 1308 (Fed. Cir.1998) (*quoting Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 934 (Fed.Cir.1987)) (in banc) (emphasis in original).

■ Once a court has determined that the accused device performs the identical function, that device literally infringes under § 112, ¶ 6 if it is "insubstantially different from the corresponding structure in the patent specification." *Ishida Co. v. Taylor,* 221 F.3d 1310, 1317 (Fed.Cir.2000) (*citing Chiuminatta Concrete Concepts, Inc.,* 145 F.3d at 1309). Because the Court has determined that the TX350 and the '140 patent perform the same function: *movement of the rear feet of the treadmill in order to increase or decrease the inclination of the tread base,* the Court must now determine if the corresponding structures of the TX350 are insubstantially different from those of the '140 patent.

To determine whether the structure is insubstantially different, the Court must decide "whether the 'way' the accused structure performs the claimed function, and the 'result' of that performance, are substantially different from the 'way the claimed function is performed by the 'corresponding structure ... described in the specification ...'" *Id.* (quoting *Odetics, Inc. v. Storage Tech. Corp.,* 185 F.3d 1259, 1267 (Fed.Cir.1999)).

Both the fifth embodiment and the TX350 adjust inclination through the movement of the feet of the treadmill. Nevertheless, each foot of the treadmill described in the '140 patent is composed of a plane shaped as a finger-like extension with a notched ratchet portion which rotates on a pivot axle. The rotation is achieved through the force of a spring or other urging element, then the ratchet foot is held in place by a pawl. There are two feet, each on either side of the base. The way in which the incline adjustment operates includes mechanisms beyond manual force to urge the pawl into the notches. Although the fifth embodiment may theoretically allow for manually adjustability, the '140 patent does not describe manual manipulation of the feet as the way to achieve variation in inclination.

In contrast, the feet of the TX350 are shaped as triangles and each side of the triangle is a different length. There is one triangular-shaped foot on either side of the rear of the tread base. The TX350 requires the hands of the user to manually turn the triangular-shaped feet to vary the inclination. Depending on which of the three sides of the feet contacts the tread base, determines the height of the incline.

An insubstantial change is one that "adds nothing of significance to the structure, material or acts disclosed in the patent specification." *Chiuminatta Concrete Concepts, Inc.*, 145 F.3d at 1309 (*quoting Valmont Indus., Inc. v. Reinke Mfg. Co.*, 983 F.2d 1039, 1043 (Fed.Cir.1993)). Plaintiff provides three examples wherein the Federal Circuit found equivalence to exist despite differences that were allegedly much greater than those found in the present case. *See e.g., Al–Site Corp. v. VSI Int'l*, 174 F.3d 1308 (Fed.Cir.1999) (finding the use of glue as an adhesive, was equivalent to the use of a rivet or a button in a device for displaying eye glasses); *IMS Technology, Inc. v. Haas Automa-tion, Inc.*, 206 F.3d 1422 (Fed.Cir.2000)(en banc)(finding a tape cassette and floppy disk are insubstantially different as interface means to transfer data); *Odetics*, 185 F.3d 1259 (finding a device that rotated by exerting force against cam follower which turned a bin about a rod infringed a device that rotated by exerting force against the teeth of a gear which turned a bin about a rod).

The Court finds that the examples provided by plaintiff are not dispositive in this inquiry. The cases cited by plaintiff do not provide the Court with particularized evidence to demonstrate the insubstantiality of differences between the inclination assembly of the TX350 and that of the '140 patent. The cases show examples of elements of a patent and offending device that differ, but do not substantially affect the function, way or result of the claim at issue. Or, as in the case of *Odetics,* the way to achieve function: exerting force to achieve rotation, was identical in both mechanisms. The differences present in this case affect the way in which the TX350 inclines as opposed to the way in which the assembly described in the fifth embodiment inclines.

To further support its claim that the differences between the two inclination assemblies are insignificant, Icon asserts that like the TX350, "the rotation of the rear feet [of the fifth embodiment structure] varies the inclination of the tread base, not the rotation of the pawl." (Plaintiff's Reply Brief at 8). Nevertheless, the Court finds that the '140 patent clearly states that the rear feet, with its finger-like end and the pawl operate inseparably to achieve variable inclines. Additionally, both the feet and pawl rotate around pivot axles (542 and 560 respectively in Figure 15 of the '140 patent). Thus, providing further evidence that rotating the feet alone, is not what is required to achieve

variations in incline according to the fifth embodiment.

Furthermore, the TX350 achieves inclination without the addition of a spring or other mechanism of force, unlike the assembly of the fifth embodiment. Therefore, not only are the structures visually different, but a substantial difference exists between the way the TX350 and the '140 patent inclination assembly vary the inclination. The '140 patent adjusts inclination through the movement of a pawl and notch structure, wherein two parts revolve around a pivot axle. Whereas the inclination adjustment of the TX350 is based on the length of the sides of triangular feet that must be manually turned. The Court also notes that the fifth embodiment incorporates a "V-shaped spring" which forces the pawl to move at the same time as the feet in order to secure the incline level of the feet. The TX350 incorporates no similar urging mechanism beyond the users' hands.

The Court finds that the triangular feet of the TX350 are substantially different from the inclination assembly of the fifth embodiment. Therefore, the Court finds that Sportcraft did not literally infringe the '140 patent through its manufacturing of the TX350.

### 5. Doctrine of Equivalents

 Under the doctrine of equivalents, an accused device "that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997) (*citing Graver Tank & Mfg. v. Linde Air Prods. Co.*, 339 U.S. 605, 609, 70 S.Ct. 854, 94 L.Ed. 1097 (1950)). Although equivalency under the doctrine of equiva-

lents is a question of fact, it should not be employed to rewrite claims or to rescue the patentee's claim from a determination of non-infringement. Hence, "[a]pplication of the doctrine of equivalents is the exception, [and] not the rule ..." *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed.Cir.1991).

In its literal infringement analysis, the Court discussed the differences in the way that the between the '140 patent and the allegedly offending structure perform the function at issue. Notably, the Court found that the way the triangular feet of the TX350 achieves inclination is substantially different from the way the planar feet with the notched finger-like extension of the '140 patent achieves the same function.

 The test for infringement under § 112, ¶ 6 and the doctrine of equivalents are closely related. *Chiuminatta*, 145 F.3d at 1310. The doctrine of equivalents, however, is broader because it allows infringement to be found in equivalents that "are beyond the literal scope of the claim." *Id.* Nevertheless, "a finding of lack of literal infringement for lack of equivalent structure under a means-plus-function limitation may preclude a finding of equivalence under the doctrine of equivalents." *Id.* Such is the case before this Court.

The Court acknowledges that the function and result of both the inclination assembly of the fifth embodiment and the TX350 have been adjudged as identical. The Court, nevertheless, finds substantial differences in the way in which the two devices perform that function. As the Court explored in detail when discussing literal infringement, the way the rotating feet means of the accused device and the claimed invention operates differs exponentially, thus no equivalence exists. Therefore, the Court finds that the TX350 is not an equivalent of the fifth embodi-

ment of Claim 26 of the '140 patent and does not infringe under the doctrine of equivalents.

### CONCLUSION

Because the Court did not find that the TX350 infringed the '140 patent based on literal infringement or the doctrine of equivalents, the Court grants defendant's motion for summary judgment. For those same reasons, the Court denies plaintiff's motion for summary judgment.

An appropriate order is attached.

### *ORDER*

For the reasons set forth in the Opinion of the Court filed herewith

IT IS this 18TH day of July 2003

ORDERED that defendant's motion for summary judgment is granted; and it is further

ORDERED that plaintiff's motion for summary judgment is denied.